196 So.2d 211 (1967)
FIRST NATIONAL BANK OF TAMPA, As Guardian of the Property of Catherine E. Sharp, a/k/a Kathryn Sharp, a/k/a Kathryn Ron Sharp, Incompetent, Appellant,
v.
FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF TAMPA, and Mrs. Viola Jones, Appellees.
No. 7240.
District Court of Appeal of Florida. Second District.
February 22, 1967.
Rehearing Denied March 28, 1967.
*212 Morrice S. Uman, Tampa, for appellant.
Wm. Terrell Hodges, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee Jones.
ALLEN, Chief Judge.
The appellant, plaintiff below, appeals from a final decree entered by the Circuit Court of Hillsborough County finding: that account No. 4001 in the Tampa Federal Savings & Loan Association is a Totten Trust; that the Guardian of Mrs. Catherine E. Sharp was without authority to withdraw said funds; and that the defendant below, Viola Jones, is entitled to have the funds, withdrawn from said account, returned to the Tampa Federal Savings & Loan Association to abide the demise of Mrs. Sharp.
This appeal is based on the counterclaim of Mrs. Viola Jones, which alleged that the plaintiff-bank, as Guardian of the property of Mrs. Sharp, had withdrawn from the Tampa Federal Savings & Loan Association the sum of $12,769.80 then being held in the Tampa Federal Savings & Loan Association in account No. S-4001, the card of which showed on its face that it was an individual trust account in the name of Mrs. Kathryn Sharp, Trustee; Mrs. Viola Jones, beneficiary.
The account was dated January 4, 1957. The signature of Kathryn Sharp appeared before the word "Trustee," and the card carried the following language on its face:
"As specified in trust agreement on reverse side hereof."
The reverse side of the Individual Trust Account card carried the following provisions:
"I, the undersigned Grantor do hereby give and grant the Savings Account applied for on the reverse side hereof, together with all payments and earnings thereon, to the Trustee named on the reverse side hereof; to have and to hold the same in trust, for the beneficiary named on the reverse side hereof, for the following uses and purposes, to-wit:
"To withdraw and transfer the same in whole or in part, and to exercise full control over the participation value thereof as though the account were held absolutely free and discharged of any trust, and without obligation on the part of the Association to look to the application of the fund.
"In the event of the death of the Trustee, the Association shall, if the beneficiary has attained the age of ____ years, transfer or pay the withdrawal value of the account to the beneficiary, free and discharged of any trust; and if at the death of the Trustee named the beneficiary has not attained such age, the Association is authorized to name and appoint a suitable person or persons as successor Trustees to hold the account until the beneficiary has attained such age, at which time such successor Trustees shall transfer and assign to the beneficiary the account, free and discharged of any trust. Such successor Trustees shall have the same powers and control over the account as the Trustee herein named."
Much of the language set forth in this trust agreement does not concern the present trust but is a part of a form used by banks all over the state. Although the trustee's signature appears before the trust agreement, it was printed on the face of the card "as specified in trust agreement on reverse side hereof."
The counterclaimant's theory of the account was that it was a Totten Trust and *213 that because of the incompetency of Mrs. Sharp the said fund, represented by account No. S-4001, should remain inviolate until the death of Mrs. Sharp unless Mrs. Jones predeceased her.
We agree with the lower court that the account constituted a Totten Trust.
Apparently the name "Totten Trust" was derived from the name of William H.B. Totten, as administrator, who was one of the parties in the leading case, In re Totten, 179 N.Y. 112, 71 N.E. 748, 70 L.R.A. 711 (1904). In that case the New York Court of Appeals held that a person depositing his own money in a savings bank in his own name as trustee for another does not establish an irrevocable trust until the depositor completes the gift by some unequivocal act or declaration during his lifetime, or unless the depositor dies before the beneficiary without revocation.
In Totten, the opinion of the Court concluded with the following paragraph:
"While we have considered, we do not cite, the numerous cases decided by the Supreme Court bearing upon the question, owing to the conflict in the opinions of learned justices in different appellate divisions. It is necessary for us to settle the conflict by laying down such a rule as will best promote the interests of all the people in the state. After much reflection upon the subject, guided by the principles established by our former decisions, we announce the following as our conclusion: A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor. This rule requires us to reverse the order of the Appellate Division, and to affirm the decree of the surrogate, with costs to the appellants in all courts."
The record in this case shows that the incompetent Mrs. Sharp had sufficient funds for her own use so it was not necessary to invade the Totten Trust for the use of the ward's support, medical care, etc.
In the case of Rickel v. Peck, 211 Minn. 576, 2 N.W.2d 140, 138 A.L.R. 1375 (1942), the Minnesota Supreme Court, in its opinion, said:
"The Court having jurisdiction of guardianships of incompetent persons has the power to order on behalf of an incompetent ward the revocation of a tentative trust of a savings account. Where the depositor becomes insane and it is necessary for his proper care and support, the court may order a tentative trust revoked * * *. [Cases omitted.]"
In the case of Seymour v. Seymour, Fla. 1956, 85 So.2d 726, our Supreme Court, in an opinion by the late Justice Hobson, said:
"As the circuit judge observed, and as we have held, the banking laws, of which the foregoing is a section, were designed primarily to regulate banks and are not necessarily conclusive of the ownership of deposited money. In this case, however, the situation with which we are confronted is a typical `Totten trust.' The `Totten trust' doctrine was definitely stated in In re Totten, 179 N.Y. 112, 71 N.E. 748, 752, 70 L.R.A. 711. In that case the operation of the doctrine was described as follows:
"`A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish *214 an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor.' (Emphasis added.)"
It will be observed that the trust funds were not turned over to the appellee in this case but are being held in trust until the eventual death of Mrs. Catherine Sharp.
Affirmed.
SHANNON and HOBSON, JJ., concur.