383 So.2d 301 (1980)
Jacquelyn Bates DROZINSKI et al., Appellants and Cross-Appellees,
v.
Lorraine J. STRAUB, Appellee and Cross-Appellant.
No. 79-163.
District Court of Appeal of Florida, Second District.
May 9, 1980.
*303 Philip W. Dann of Baird, Robinson & Dann, and E. Paul Dietrich, St. Petersburg, for appellants and cross-appellees Jacquelyn Bates Drozinski, Peter Nemec, Laurie Ellen Bates and John B. Nemec.
R. Grable Stoutamire of Macfarlane, Ferguson, Allison & Kelly, Clearwater, for appellant and cross-appellee Bank of Clearwater, as personal representative of the estate of Barbara M. Nemec, deceased.
Emil C. Marquardt, Jr., and Stephen O. Cole of McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, for appellee and cross-appellant.
DANAHY, Judge.
We have occasion in this case to reconsider the question whether the guardian of an incompetent succeeds to and may exercise the incompetent's unrestricted right to withdraw funds from an account in a financial institution standing in the joint names of the incompetent and another.
In Cape Coral Bank v. Kinney, 321 So.2d 597 (Fla. 2d DCA 1975), we answered that question in the affirmative as to a joint account in a savings and loan association, based on the provisions of Sections 665.271 and 665.301, Florida Statutes (1979), which are substantially the same today as they were at the time of our decision in the Cape Coral Bank case. Those statutes apply to joint accounts in savings associations. Comparable statutory provisions apply to joint accounts in banks and trust companies. §§ 656.33 and 659.29, Fla. Stat. (1979). We are persuaded that none of these statutes supports the result which we reached in the Cape Coral Bank case. We, therefore, recede from our decision in that case and rule that except to the extent necessary to obtain funds for the incompetent's care and support, the guardian of an incompetent joint depositor may not withdraw funds from a checking or savings account standing in the joint names of the incompetent and another.
Two joint savings accounts are involved in the case before us, one at Bank of Indian Rocks (the bank) and the other at First Federal Savings and Loan Association of Largo (the federal). The provisions of Chapter 659 (the Banking Code, Second Part) govern the bank; the provisions of Chapter 665 (the Savings Association Act) govern the federal.
Both of the accounts in question originally stood in the name of Barbara Nemec. In 1973 Nemec changed the accounts to joint accounts in her name and that of appellee. Two years later Nemec was declared incompetent and Bank of Clearwater was appointed guardian of her property. The guardian instructed the bank and the federal to transfer the accounts to the guardian, and both institutions did so.
Barbara Nemec died four months after having been declared incompetent and Bank of Clearwater qualified as personal representative of her estate. In that capacity it continued to hold the proceeds of both joint savings accounts as assets of Nemec's estate.
*304 Appellee, who was both a close friend of Barbara Nemec and related to her by marriage, filed a petition in the probate proceedings pertaining to Nemec's estate claiming ownership as surviving joint owner of $42,000 in United States savings bonds, Series H, standing in the names of appellee and Barbara Nemec as co-owners at the time of Nemec's death. Appellee also claimed the proceeds of the two savings accounts by right of survivorship, contending that Nemec's guardian had no authority to appropriate the funds in those accounts as guardianship assets. Appellee prevailed with respect to the savings bonds, but the trial judge ruled against her as to the savings accounts. A final judgment on appellee's petition was entered accordingly and this appeal followed.
Appellants, who are the personal representative of Nemec's estate and four of the six beneficiaries under her will, contend that the trial judge erred in ruling that appellee was entitled to the savings bonds. We find no merit in that contention. By cross-appeal, appellee argues that the trial judge erred in denying her petition with regard to the joint savings accounts. We agree and reverse that portion of the judgment before us for review.
In the absence of a statute providing otherwise,[1] the rule is that the guardian of an incompetent cannot withdraw funds in an account held jointly by the ward and another except for the ward's necessities, since a withdrawal under other circumstances would be the exercise of a personal right of the ward. Howard v. Imes, 265 Ala. 298, 90 So.2d 818 (1956). Howard v. Imes, supra, generally regarded as the leading case announcing that rule, prompted an annotation on the subject in 62 A.L.R.2d 1091 (1958). An examination of later cases confirms that the rule remains generally recognized today.
This court applied the rule in an analogous situation in First Nat'l Bank of Tampa v. First Fed. Sav. & Loan Ass'n of Tampa, 196 So.2d 211 (Fla. 2d DCA 1967). In that case the trustee of a Totten trust became incompetent and her guardian withdrew the entire balance in the trust account. Noting that the incompetent had sufficient funds for her own use so that it was not necessary to invade the Totten trust account for her support, medical care, etc., this court affirmed the decision of the trial judge that the guardian return the funds to the Totten trust account to abide the demise of the incompetent.
The First District Court of Appeal reached the same result in a case involving joint accounts in two savings associations. In re Guardianship of Williams, 313 So.2d 411 (Fla. 1st DCA 1975). In that case, both of two joint depositors became incompetent. The trial judge ruled that the moneys on deposit in the savings accounts held by them jointly should be divided equally between their guardians. Our sister court reversed on the ground that a guardian's authority to use the proceeds of his ward's joint account is limited by the necessity of the ward. The court reasoned that, therefore, the trial judge could not authorize a termination of the joint accounts and division of the proceeds between the estates of the two incompetents. The court observed that each owner should continue to have the right of survivorship should the other joint owner die; and in the meantime, either guardian should have the right to draw on the account for the necessities of its ward. The court reversed with directions to reinstate the joint accounts with right of survivorship.
This court departed from the rationale of the First Nat'l Bank of Tampa case and the Williams case by its holding in Cape Coral Bank v. Kinney, supra. In the latter case the guardian of an incompetent requested withdrawal of all the moneys in its ward's joint account at First Federal Savings and Loan Association of Ft. Myers. The federal, apparently fearing a claim on behalf of the other joint depositor, refused to pay the *305 money to the guardian and the guardian then filed a suit seeking a declaration of its right to the funds. The trial judge dismissed the suit on motion of the other joint depositor. Reversing, this court said:
The record reflects that the bank as the duly appointed guardian of Mrs. Arrowood had made a proper request for withdrawal from the savings account at a time when the passbook was in First Federal's possession. Fla. Stat. § 665.301 (1969). Standing in the shoes of its ward as a joint owner of the account, the bank had the right to withdraw the funds. Fla. Stat. § 665.271 (1969). The request for withdrawal should have been honored by First Federal.
Most states, including Florida, adopted statutes years ago providing generally that when a bank account is maintained in the names of two or more persons in such form that the moneys in the account are payable to either or the survivor or survivors, the moneys in the account may be paid to any one of such persons during their lifetime or to any one of the survivors of them after the death of any one or more of them. Such statutes were regarded by most courts as being designed primarily to regulate and protect banks and thus not necessarily conclusive of the ownership of deposited money. E.g., Seymour v. Seymour, 85 So.2d 726 (Fla. 1956); Cerny v. Cerny, 152 Fla. 333, 11 So.2d 777 (Fla. 1943); Moskowitz v. Marrow, 251 N.Y. 380, 396, 167 N.E. 506, 511 (N.Y. 1929) (Cardozo, C.J., concurring); Note, Disposition of Bank Accounts: The Poor Man's Will, 53 Col.L.Rev. 103, 110 (1953). That view is still current. Constance v. Constance, 366 So.2d 804 (Fla. 3d DCA 1979); contra, In Re Estate of Bonness, 13 Wash. App. 299, 535 P.2d 823 (Ct. App. 1975).
Over the years statutes of this kind have been expanded beyond their original bank protection purpose so that they now contain provisions touching upon ownership rights in joint accounts. The Florida legislature enacted Section 665.271 (pertaining to joint accounts in savings associations) and Section 659.291 (pertaining to joint accounts in banks) in 1971. Those statutes were said to be intended to eliminate uncertainties surrounding survivorship rights. Note, Survivorship Rights in Joint Accounts, 24 U.Fla.L. Rev. 476, 476 (1972). The statutes represent two different approaches;[2] Section 665.271 combines in one section provisions protecting savings associations and provisions pertaining to ownership rights in joint accounts. The section provides:

When a savings account, other than a convenience account as provided in s. 665.272, is maintained in any association or federal association in the names of two or more persons, whether minor or adult, in such form that the moneys in the account are payable to either or the survivor or survivors, then, in the absence of fraud or undue influence, such account and all additions thereto shall be the property of such persons as joint tenants. The moneys in the account may be paid to or on the order of any one of such persons during their lifetimes or to or on the order of any one of the survivors of them after the death of any one or more of them. The opening of the account in such form shall, in the absence of fraud or undue influence, be conclusive evidence in any action or proceeding to which either the association or the survivor or survivors is a party of the intention of all of the parties to the account to vest title to such account and the additions thereto in such survivor or survivors. By written instructions given to the association by all the parties to the account, the signatures of more than one of such persons during their lifetime or of more than *306 one of the survivors after the death of any one of them may be required on any check, receipt, or withdrawal order, in which case the association shall pay the moneys in the account only in accordance with such instructions, but no such instructions shall limit the right of the survivor or survivors to receive the moneys in the account. Payment of all or any of the moneys in such account as provided in this section shall discharge the association from liability with respect to the moneys so paid, prior to receipt by the association of a written notice from any one of them directing the association not to permit withdrawals in accordance with the terms of the account or the instructions. After receipt of such notice, an association may refuse, without liability, to honor any check, receipt, or withdrawal order on the account pending determination of the rights of the parties. No association paying any survivor in accordance with the provisions of this section shall thereby be liable for any estate, inheritance, or succession taxes which may be due this state. (Emphasis added)
Section 665.301 provides that when a savings account is held in a savings association by a person who becomes incompetent and an adjudication of incompetency has been made by a court of competent jurisdiction, the association may pay or deliver the withdrawal value of such savings account and any earnings that may have accrued thereon to the guardian for such person upon proof of his appointment and qualification. We relied on this section for our conclusion in Cape Coral Bank v. Kinney, supra, that the guardian of an incompetent had the unrestricted right to withdraw all the funds from a joint account held by the incompetent and another. We believe that interpretation was incorrect. Even assuming that Section 665.301 applies to such a situation (that is, that a savings account standing in the name of an incompetent and another person is held by the incompetent), Section 665.301, we believe, has no purpose other than to protect the savings association which pays or delivers the withdrawal value of the savings account to the guardian of the incompetent. We do not believe this section goes beyond protection of the savings association to confer ownership on the guardian of the incompetent joint depositor.
Section 659.29 offers a short combination of 665.271 and 665.301, providing as follows:

Bank or trust company deposits, or any part thereof, or any interest therein made in the names of two or more persons, payable to either, or payable to either or the survivor, and deposits made to an account standing in the names of two or more persons payable as hereinabove mentioned, may be paid to, or pursuant to the order of, either or any of said persons or to, or pursuant to the order of, the guardian of the property of any such person who is incompetent, whether the other or others be living or not and whether the other or others be competent or not; and the check or other order for payment of any such person, or the receipt or acquittance of the person so paid, shall be a valid and sufficient release and discharge to the bank or trust company for any payment so made. (Emphasis added)
We think it clear that Section 659.29 does nothing more than protect the bank which pays funds from a joint account to the guardian of an incompetent joint depositor, and does not confer ownership rights on such a guardian.
In sum, in our view, neither Section 659.29 nor Sections 665.271 and 665.301 in combination alter the rule announced in Howard v. Imes, supra. We hold that the guardian of the property of an incompetent may withdraw funds from a joint checking or savings account in the name of the incompetent and another only to the extent necessary for the incompetent's support and care.[3] There being no such necessity in the *307 case before us, the guardian's unauthorized withdrawal of the entire balance in the savings accounts jointly owned by Barbara Nemec and appellee did not have the effect of terminating appellee's survivorship rights in those accounts. Accordingly, upon Nemec's death, appellee became sole owner of the funds representing the proceeds improperly withdrawn from the accounts by the guardian and is entitled to have those funds paid to her from Nemec's estate, where the funds are presently held. Accord, In Re Wszolek Estate, 112 N.H. 310, 295 A.2d 444 (1972).
Appellants offer an alternative argument. They contend that the guardian's withdrawal of the funds from the joint accounts was permitted by the provisions of Section 744.444, Florida Statutes (1975). That section, which has since been amended, authorized a guardian of the property, without obtaining court approval, to:
(9) Elect whether to dissent from a will or to exercise any other choice that the ward might exercise himself if sui juris or competent, and perform the act or acts or execute the documents as may be necessary or proper to exercise, consummate, or execute any power of appointment or other power that the ward might have lawfully exercised, consummated, or executed if sui juris or competent, as the best interests of the ward require.
The legislature has eliminated most of the foregoing provision, so that Section 744.444(9) presently permits a guardian only to elect whether to dissent from a will or assert any other right or choice available to a surviving spouse in the administration of a decedent's estate.
We decline to interpret Section 744.444(9) in its 1975 version as conferring on a guardian the right to withdraw all of the funds from a joint account held in the joint names of the ward and another. We reach that conclusion by considering the juxtaposition in subparagraph (9) of the word "choice" and the words "power of appointment, or other power." We believe that the choice referred to is the choice whether to exercise a power of election or appointment.
We reverse that part of the final judgment declaring that appellee has no interest in the funds representing the proceeds of the joint savings accounts at Bank of Indian Rocks and First Federal Savings and Loan Association of Largo, and direct that the trial judge enter judgment for appellee with respect to those funds. In all other respects the final judgment is affirmed.
AFFIRMED IN PART AND REVERSED IN PART, WITH DIRECTIONS.
HOBSON, Acting C.J., and SCHEB, J., concur.
NOTES
[1] In re Estate of Thompson, 539 S.W.2d 650 (Mo. Ct. App. 1976), affords an example of a statute construed as providing otherwise.
[2] Section 656.33, Florida Statutes (1979), the third joint account statute (applying to industrial banks), contains no language expressly touching on ownership rights:

Bank deposits, or any part thereof, or any interest therein made in the names of two or more persons, payable to either, or payable to either or the survivor, may be paid to either of said persons whether the other be living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.
[3] We are aware that joint accounts are frequently established with one joint owner placing funds in an account with an understanding that the other joint owner is to utilize those funds during the depositor's life to provide for the depositor's needs. If the depositor is subsequently declared incompetent, the possibility exists that, under the general rule as restated in this case, the nondepositing joint owner may withdraw all of the funds from the account prior to a judicial determination of needs, thus frustrating the depositor's intent. To prevent this scenario the trial judge, on declaring the depositor incompetent, could entertain an application to restrain the nondepositing joint owner from withdrawing any funds pending a determination by the court of the parties' intent in establishing the account.

In 1977 the legislature enacted Section 659.292, Florida Statutes (1979), creating convenience accounts and thereby eliminating one of the policy considerations underlying Cape Coral Bank, i.e., the need to insure that a depositor's funds are available to the guardian of the depositor to provide for his needs. In 1979 the legislature enacted a similar statute applicable to savings associations. § 665.272, Fla. Stat. (1979). The convenience account enables a principal to deposit money and designate an agent with the right to make deposits and to withdraw funds from or draw checks on the account. The statute contemplates payment of any balance to the guardian of the principal's property in the event of incompetency or to his personal representative in the event of death. Thus, during the principal's incompetency, the funds can be used for his benefit; yet, the principal avoids the risk of the balance being paid to an unintended beneficiary upon incompetency or death.