SHIVERS, Judge.
Appellant Gail Gentzel, daughter of the decedent Alma B. Buchanan, appeals the probate order determining that a' savings and loan association savings account, a commercial bank certificate of deposit, a commercial bank savings account, and a commercial bank checking account, all in the joint names of appellant Gentzel and decedent, are probatable assets of the decedent which pass under the decedent’s will rather than to the appellant Gentzel as surviving account holder. The trial court found that these joint accounts were really the property of the decedent, that the presumption in law favoring the daughter was rebutted by the daughter’s own testimony that she considered the questioned assets to be the decedent’s property that it is clear it was the intention of both the daughter and the decedent that the accounts were opened and maintained for the benefit of the decedent, and that the daughter had no interest in the accounts.
Appellant contends the trial court erred by failing to apply section 665.271, Florida Statutes (1979) and section 659.291, Florida Statutes (1979) to the facts of this case.[1]
We conclude the trial court correctly applied these statutes to this case and there is *367 competent evidence upon which to affirm the trial court’s order.
The decedent Alma B. Buchanan died testate March 17, 1980. Except for a few items of personal clothing and jewelry which she bequeathed to her daughter, the decedent devised her entire remaining estate to her two children, John G. Buchanan and the appellant, Gail B. Gentzel, in equal shares.
The decedent had been badly injured in an automobile accident in 1967 and from the time of her husband’s death in 1974, decedent was maintained in nursing homes in Pennsylvania, California and Florida. She did not reside with her daughter or with her son.
It was dangerous for decedent to walk by herself. She was partially paralyzed on the left side, experienced frequent dizzy spells, and was medicated for seizure activity. After a brain abscess operation in approximately 1971, decedent lost interest in caring for her personal business, gave up playing bridge, and did not want to go anywhere. She had difficulty in swallowing, and the cause of her death was food strangulation.
Following her husband’s death, the decedent gave her daughter power of attorney so that, according to the daughter’s testimony, the daughter “could do all the running,” and the joint accounts were opened then. The money in the joint accounts was later used to open the joint accounts in Pensacola after the decedent moved to a nursing home in Pensacola, the city where the daughter resided.
The daughter testified that the money in all of the questioned accounts was “my mother’s money,” that she, the daughter, had no interest in the accounts.
The daughter declared that it was not until after she talked to her lawyer after her mother’s death that the daughter considered the funds in these accounts to be hers.
The money in the four accounts in question came solely from the decedent’s assets and the daughter did not deposit any of her own money there. Money was expended from the accounts for the decedent.
Section 665.271, Florida Statutes (1979) reads:
When a savings account, other than a convenience account as provided in s. 665.272, is maintained in any association or federal association in the names of two or more persons, whether minor or adult, in such form that the moneys in the account are payable to either or the survivor or survivors, then, in the absence of fraud or undue influence, such account and all additions thereto shall be the property of such persons as joint tenants. The moneys in the account may be paid to or on the order of any one of such persons during their lifetimes or to or on the order of any one of the survivors of them after the death of any one or more of them. The opening of the account in such form shall, in the absence of fraud or undue influence, be conclusive evidence in any action or proceeding to which either the association or the surviv- or or survivors is a party of the intention of all of the parties to the account to vest title to such account and the additions thereto in such survivor or survivors. By written instructions given to the association by all the parties to the account, the signatures of more than one of such persons during their lifetime or of more than one of the survivors after the death of any one of them may be required on any check, receipt, or withdrawal order, in which case the association shall pay the moneys in the account only in accordance with such instructions, but no such instructions shall limit the right of the survivor or survivors to receive the moneys in the account. Payment of all or any of the moneys in such account as provided in this section shall discharge the association from liability with respect to the moneys so paid, prior to receipt by the association of a written notice from any one of them directing the association not to permit withdrawals in accordance with the terms of the account or the instructions. After receipt of such notice, an association may refuse, without liability, to honor any *368 check, receipt, or withdrawal order on the account pending determination of the rights of the parties. No association paying any survivor in accordance with the provisions of this section shall thereby be liable for any estate, inheritance, or succession taxes which may be due this state.
Section 659.291, Florida Statutes (1979) reads, in pertinent part:
(1) Unless otherwise expressly provided in the signature contract card or other similar instrument delivered to and accepted by a bank in connection with the opening or maintenance of an account, including a certificate of deposit, in the names of two or more persons, whether minor or adult, payable to or on the order of one or more of them or the surviving account holder or holders, all. such persons and each person depositing funds in any such account shall be presumed to have intended that upon the death of any such person all rights, title, interest and claim in, to, and in respect of, said deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper setoffs and charges in favor of the bank, shall vest in the surviving account holder or holders.
(2) The presumption herein created may be overcome only by proof of fraud or undue influence or clear and convincing proof of a contrary intent. In the absence of such proof, all rights, title, interest and claims in, to, and in respect of, said deposits and account and the additions thereto, and the obligation of the bank created thereby, less all proper set-offs and charges in favor of the bank against any one or more of such persons, shall, upon the death of any such person, vest in the surviving account holder or holders, notwithstanding the absence of proof of any donative intent or delivery, possession, dominion, control, or acceptance on the part of any person, and notwithstanding the provisions hereof may constitute or cause a vesting or disposition of property or rights or interests therein, testamentary in nature, which, except for the provisions of this section, would or might otherwise be void or voidable.
As to the bank savings account, checking account and certificate of deposit the facts of this case clearly show the trial court to be correct in finding the presumption of right of survivorship overcome by clear and convincing proof of contrary intent. Section 659.291 makes explicit provision for such a finding. More problematical is the savings account maintained in the Pensacola Home and Savings Association, a savings and loan association.[2] Section 665.271 appears to create a mandatory, irrebuttable presumption of the intent of the parties to create a right of survivorship.[3] We conclude, however that on the facts of this case, section 665.271 does not apply.
In order for section 665.271 to apply the account must be “maintained ... in such form that the moneys in the account are payable to either or the survivor or survivors.” The signature card entitled “Original Contract” from the Pensacola Home and Savings Association[4] is signed by both decedent and appellant. Nowhere in that contract, however, is provision made for right of survivorship. Even the words “joint tenants” are conspicuously absent from the signature card. From the four corners of this instrument which created the account, it is impossible to tell whether the parties intended a joint tenancy with right of survivorship, tenancy in common, or a “convenience account,” i.e., an agent *369 and principal relationship under section 665.272, Florida Statutes (1979).[5]
Another statute relevant to this case is section 665.231(2), Florida Statutes (1979)[6]:
Each holder of a savings account shall execute a savings account contract setting forth any special terms and provisions applicable to such savings account and the ownership thereof and the conditions upon which withdrawals may be made not inconsistent with the provisions of this chapter.
The Second District Court of Appeal faced a question similar to the one sub judice in Fortman v. Freedom Federal Savings and Loan Association of Tampa, 403 So.2d 985 (Fla. 2d DCA 1981). In Fortman a certificate of deposit was purchased by a man and issued in his name and two others. Nothing on the certificate indicated manner of ownership. A signature card with sur-vivorship language was given to the purchaser to be signed by himself and the others, but at the purchaser’s death the card was unexecuted. The court held that section 665.271 should be read in pari mate-ria with section 665.231(2) and that since the special terms of the signature card contract were not executed, a joint account with right of survivorship never came into existence. This reasoning is even more compelling in a case such as the one at bar. Where the evidence below shows that no right of survivorship was intended, this court cannot overlook the absence of surviv-orship language in the contract of the parties.
This case, as was Fortman, is distinguishable from the decision of the Fourth District Court of Appeal in Teasley v. Blankenberg, 298 So.2d 431 (Fla. 4th DCA 1974). In Teasley there was no evidence that the account expressly provided for right of sur-vivorship, nor was there clear and convincing evidence of contrary intent. The court found that because of the savings and loan rules and regulations that the account was held under, the account was maintained in such form as to be payable to either or the survivor or survivors. Thus the mandatory presumption of section 665.271 was applied. In the case sub judice, as in Fortman, there is no evidence to show that there are savings and loan rules and regulations which would automatically cause an account placed in two names, without more, to be a survivorship account.
Appellant’s reliance on Drozinski v. Straub, 383 So.2d 301 (Fla. 2d DCA 1980) is misplaced. Drozinski is inapposite here since in that case there was no question as to whether or not the accounts were joint. Under the facts at bar the account at Pensacola Home and Savings Association would appear to be closer to a convenience account under section 665.272 rather than a joint account with right of survivorship subject to section 665.271. We find it unnecessary to decide whether this account is a convenience account vel non, since we hold that the account is not maintained in such form as to be payable to either or the survivor. There is no error.
AFFIRMED.
ERVIN and WENTWORTH, JJ, concur.

. Section 665.271, Florida Statutes (1979) (current version at section 665.063(l)(a), Florida Statutes (1981)) applies to savings and loan associations. Section 659.291, Florida Statutes (1979) (current version at section 658.56, Florida Statutes (1981)) applies to banks.

.The parties have stipulated that the Pensacola Home and Savings Association was at all material times a savings and loan association. It is unclear why the legislature chose to treat bank accounts differently from savings and loan accounts in this situation. See generally, Note, Survivorship Rights in Joint Accounts, 24 U.Fla.L.Rev. 476 (1972).

. In the criminal law, such irrebuttable presumptions are constitutionally suspect. See, County Court of Ulster County, New York v. Allen, 442 U.S. 140, 157-160, 99 S.Ct. 2213, 2224-26, 60 L.Ed.2d 777 (1979). We express no opinion as to the constitutionality of section 665.271.

. Personal Representative’s Exhibit No. 6.

. Current version at section 665.063(7), Florida Statutes (1981).

. Current version at section 665.0611(2), Florida Statutes (1981).