## ARONSTAM v BERNSTEIN, etc.
### Case No. 85-3981 CA (L) O
Fifteenth Judicial Circuit, Palm Beach County

March 3, 1987

### APPEARANCES OF COUNSEL

**Walter Wolf Kaplan** and **Cecil T. Farrington** for plaintiff.

**Harvey Kaufman, Bernstein, Karpier, Monchick, and Karp, P.A.,** for defendant.

## OPINION OF THE COURT

RICHARD B. BURK, Circuit Judge.

THIS MATTER came before the Court for Non-Jury Trial on February 23, 1987. Testimony was taken on February 23rd, 24th and 25th and Final Argument was presented on March 2, 1987.

The suit was instituted on May 31, 1985 when the Plaintiff filed her action against the Defendant claiming the proceeds of three (3) Totten Trusts plus interest. The Defendant filed an Answer on July 17, 1985 denying the allegations of the Complaint and alleging Affirmative Defenses of undue influence, insufficient mental capacity, failure of consideration, and breach of fiduciary duty. On January 13, 1986, an Amended Counterclaim was filed seeking to set aside certain other Totten Trusts to which an Answer was filed by the Plaintiff on February 7, 1986, generally denying the allegations contained in the Amended Counterclaim. On October 3, 1986, pursuant to Court Order, a Pretrial Stipulation was filed by the parties. In the pretrial Stipulation the parties agreed to the following facts of the case and issues of law and fact for determination at trial.

*"FACTS OF THE CASE* Defendant's Decedent, VERNA M. BRADY, for twelve (12) years until the death of Decedent on December 26, 1984, lived in a condominium unit in Century Village located west of West Palm Beach in Palm Beach County, Florida.

After the death of Decedent's husband on February 20, 1981, Decedent lived alone in her condominium unit. In 1981, Decedent made her will, with codicils in 1982 and 1983. Decedent devised her entire probate estate to PATRICIA KALENDEK and EILEEN MUNSON and ELEANOR BRADY, all residing in New York.

The inventory of Decedent's probate estate indicated a gross value of $163,587.19, including $140,000.00 in various types of accounts in banks and savings and loans.

On November 8, 1984, Decedent was adjudicated incompetent on the petition of PATRICIA KALENDEK by the Probate Division of the Circuit Court of Palm Beach County, Florida, based on a finding of organic brain syndrome. The same day Letters of Guardianship of person and property were granted to PATRICIA KALENDEK.

Decedent established savings and loan association accounts purportedly in trust for Plaintiff as follows:

DATED ISSUED-ORIGINAL AMOUNT-CERT. NO.-AMT PD

**97**

TO GUARDIAN AND DATE-AMT PD TO ESTATE AND DATE

Atlantic Federal Savings and Loan Association 6/1/84 $16,000.00 05-141136-9 $16,680.27 on 11/8/84 on 1/5/85

City˙ Federal Savings and Loan 9/26/84 $24,900.50 099-9537342 $24,915.44 on 11/9/84 $24,923.72 on 1/5/85

TOTAL $41,566.50 $42,561.62

Each of the above accounts was closed out by the Decedent's guardian on the date indicated, when the guardian withdrew all the funds or caused the accounts to be transferred to the sole name of the guardian. There is also a dispute as to a trust account of Decedent to which Plaintiff claims to be trust beneficiary at City Federal Savings and Loan with a balance of $713.34 as of January 2, 1985 when it was closed to the Personal Representative.

On October 1, 1982, at First Federal Savings Association of Delray Beach, Decedent purchased certificate of deposit No. 25116 as Account No. 013-7016116, naming Plaintiff as beneficiary, in the amount of $1,000.00. That certificate was delivered to Plaintiff by the Defendant Personal Representative on January 15, 1985.

At the time Decedent was adjudicated incompetent she was the depositor of other existing accounts which named as beneficiaries ELEANOR BRADY and PATRICIA KALENDEK and EILEEN MUNSON aggregating $37,634.55 in face amount. During the brief guardianship the guardian withdrew nothing from these accounts and the accounts were transferred from the guardianship to the Defendant as Personal Representative.

During the guardianship the entire disbursements of the guardian totaled $8,863.72.

*RULES OF LAWS OF WHICH THERE IS AGREEMENT*

The parties are relying on the following cases, and others;

1. *First National Bank of Tampa v. First Federal Savings and Loan Association* 196 So. 2d 211 (Fla. 2d DCA 1967).

2. *Drozinski v. Straub* 383 So.2d 301 (Fla. 2d DCA 1980).

3. *In Re Estate of Carpenter* 253 So. 2d 697 (Fla. 1977).

4. *Deshambo v. Baratz* 421 So.2d 748 (Fla. 4th DCA 1982).

*STIPULATED FACTS REQUIRING NO PROOF*

Facts as set forth in the foregoing FACTS OF THE CASE.

## ISSUES OF LAW AND FACT FOR DETERMINATION AT TRIAL

The only issues of law and fact are as follows:

1. Whether the Decedent had sufficient mental capacity to open the accounts with Plaintiff as beneficiary, at the times the accounts were opened.

2. Whether the naming of Plaintiff as beneficiary of the accounts was done by the Decedent as the result of undue influence on the part of the Plaintiff.

3. Whether Plaintiff or Defendant has the burden of proof as to the above issues.

4. Whether the accounts in question were opened by the Decedent and whether such accounts are Totten Trusts."

The Court will answer at the outset the Issues of Law and Fact and will then indicate the Findings of Fact by the Court upon which the Court relies in making the decisions. Question 1 is answered in the affirmative; question 2 is answered in the negative; both parts of question 4 are answered in the affirmative. As it relates to question 3, the Court determines that the burden of proof as to questions 1 and 2 was the Defendant's burden. With regard to the undue influence issue, the *State of Lightfoot, et al. v. Duval,* 433 So.2d 607 (4th DCA 1983) sets forth the burden of proof and the presumptions and shifting of the burden of going forward with the evidence.

In addition to the foregoing Stipulation of Facts, the Court based upon the evidence presented, makes the following Findings of Fact and Conclusions of Law:

1. VERNA M. BRADY, the decedent for whose estate the Defendant is the Personal Representative, died a widow 76 years of age on December 26, 1984 in Palm Beach County, Florida, where she resided at all material times.

2. Prior to her last illness, Decedent was able to walk, but was lame, with a plate in her hip, one leg shorter than the other, arthritis of lower extremities, and other ambulatory difficulties, including dizziness, as a result of all of which she fell and injured herself several times. On October 14, 1984, Decedent had a bad fall in her apartment which was followed by a severe stroke. This left Decedent totally incapacitated and she died within two months. Prior to the October 24, 1984 accident, Decedent was mentally sound and in generally good health for her age, except for her ambulatory difficulties.

**99**

3. On November 8, 1984, the Decedent was adjudicated incompetent by the Probate Division of this Court and guardian of the person and property was appointed for Decedent. Decedent's estate was then valued at $168,000.00 and consisted of a $28,000.00 condominium apartment in Palm Beach County, and 26 savings and loan time deposit or money market accounts with total value of approximately $140,000.00

4. All of the accounts were of the type known as "Totten trusts", which is to say they were held by Decedent as trustee, for named beneficiaries. Each trust was revocable by Decedent during her life time and, if not revoked, vested in the beneficiary on Decedent's death. See *First Nat. Bank of Tampa v. First Fe. S. & L.Ass'n.*, 196 So.2d 211 (Fla. 2d DCA 1967).

5. Decedent then had no known blood relative and the beneficiaries named for the trusts were two nieces of Decedent's late husband, EDDIE BRADY, and the niece's mother, ELEANOR BRADY, (who was the widow of a brother of Decedent's late husband), except that four accounts named the Plaintiff, ANN ARONSTAM, as beneficiary. Decedent's will and codicils devised the condominium apartment to the nieces and the residuary estate to their mother, ELEANOR BRADY. The nieces did not challenge the propriety of the guardian having closed out the Decedent's several Totten trust accounts wherein the nieces were beneficiaries, the proceeds of which would pass instead under the Decedent's Will to their mother. PATRICIA KALENDEK, who was one of the nieces, was guardian of the person and property.

6. The four Totten trust accounts naming Plaintiff as beneficiary were, as follows:

A. $1,000.00 established October 1, 1982. Upon Decedent's death, the certificate for this account was delivered by the Defendant Personal Representative to the Plaintiff who cashed it. That account is not in issue in this action.

B. $651.91 established March 6, 1984. This account was closed out by the Guardian and re-issued in the Guardian's name. Upon Decedent's death, the Personal Representative had cashed in the account on January 2, 1985 for $713.34.

C. $16,000.00 issued June 1, 1984. This account was closed by the Guardian and the $16,688.27 proceeds and $1,000.00 other funds were deposited by the Guardian in a guardianship checking account on November 9, 1984. The remaining proceeds of that account after the death of the Decedent, were paid to Decedent's estate.

D. $24,900.50 which was modified September 16, 1984, to name

100

Plaintiff as beneficiary. This account was closed out by the Guardian and the certificate was re-issued in Guardian's name. Upon Decedent's death, the proceeds of the account were paid to the Decedent's estate on January 2, 1985, in the amount of $24,923.72.

7. The Court finds that the Guardian exceeded her authority in closing out the ward's Totten trust accounts which named Plaintiff as beneficiary and that the Defendant Personal Representative, who eventually received the entire proceeds of those accounts after Decedent's death, holds the funds in trust for Plaintiff. Defendant is thereto indebted to the Plaintiff for those proceeds with interest since January 2, 1985. See *Drozinski v. Straub*, 383 So.2d 301 (Fla. 2d DCA 1980) and authorities there cited.

8. A Guardian is not the alter ego of the ward and does not own legal title to the ward's property. The Guardian has only limited power with regard to the ward's property and he cannot exercise a personal right of the ward. The ward's trusteeship of, and power to revoke, a Totten trust is a *personal right of the ward* which the Guardian cannot lawfully assume or exercise, except with specific authorization from the Court administering the guardianship, and then only to the extent that those funds are needed for the necessary expenses of support or medical care for the ward. See *Howard v. Imes*, 265 Ala. 298, 90 So.2d 818, 62 ALR 2d 1086 (1956), recognized as the leading case in *Drozinski v. Straub*, 383 So.2d 301, text p. 304 (Fla. 2d DCA 1980). See also Sections 744.441 and 744.444, Florida Statutes (1983) (Florida Guardianship Law).

9. The Court finds that no approval for the withdrawal of funds from the Totten trust accounts naming Plaintiff as beneficiary was obtained from the guardianship Court and that it was not necessary to close out these accounts, or any of them, to provide funds to provide support or medical care for the ward (the Decedent).

10. The Court finds for the Plaintiff and against the Defendant as to these affirmative defenses. There was no direct evidence showing that the Plaintiff exercised undue influence, or any influence, upon the Decedent regarding the savings and loan accounts naming Plaintiff the Totten trust beneficiary. The Court finds that while the Decedent and the Plaintiff (who were both widows in their seventies living in the same condominium complex) were very close in their relationship to each other, the Decedent was a woman of leadership, initiative and comparative affluence, who was the dominant person in their relationship. Decedent had difficulty in walking about and needed friendship and Plaintiff helped with both. Decedent frequently took Defendant

101

[sic] Plaintiff out to dinner and paid for their taxis. Plaintiff did most of Decedent's grocery and other shopping and carried Decedent's many messages to the nearby savings and loan branch offices for the servicing of Decedent's 26 times deposit accounts which matured frequently so they required much attention and direction from Decedent. Decedent, through her telephone calls, and the Plaintiff, as Decedent's frequent messenger for the necessary account papers, became personally well known at those branch savings and loan offices.

11. The Court finds that Plaintiff's subservient relationship with Decedent was not the type of confidential relationship as raised a presumption of undue influence regarding a transaction between them. However, even if a confidential relationship were found to have existed between the Decedent and Plaintiff at the times of the opening of the three 1984 Totten trust accounts naming Plaintiff as beneficiary, so as to raise a presumption of undue influence, the Court finds that Plaintiff's active role in the opening of the accounts on June 1 and September 26 was reasonably explained by the testimony of Plaintiff and the two savings and loan officers who handled the transactions for Decedent. This reasonable explanation satisfied any burden of coming forward with evidence and was sufficient to cause any presumption of undue influence to vanish. *In Re Estate of Carpenter*, 253 So.2d 697 (Fla. 1971); *Ahlman v. Wolf*, 483 So.2d 889 (Fla. 3d DCA 1986), Plaintiff did not participate in the opening of the account naming Plaintiff a Totten trust beneficiary which was opened March 6, 1984.

12. Alexander Miranda, M.D. the Deceased's internal medicine and endocrinologist, testified that he had seen and treated her for several years prior to her death mainly for high blood pressure and pain from leg and hip problems. In May of 1984, she appeared to have had a stroke but the doctor believes it was just spasms of the vessels and not a stroke. He discharged her from the hospital although indicating in his notes that she appeared to have no recollection of recent events, had memory lapses, and suffered from many years of depression. On the October hospital admission, he indicated in his notes that she was suffering from falling down episodes, mentally confused, wouldn't take medication, very apprehensive and then suffered an acute episode which apparently was the stroke that she suffered while in the hospital. All of these matters resulted in his concurrence that on October 22, 1984, she was not competent to take care of herself. The doctor further indicated that the Decedent seemed to rely on the Plaintiff for transportation, food purchases, companionship, and the like. The doctor further indicated that in August, 1984, he had notes which reflected that the Decedent was ambulatory, discussed matters intelligently and seemed to be getting along all right.

102

13. Stanley W. Conrade, M.D. testified that he is a neuropsychiatrist and that he was one of the people appointed to determine competency in October of 1984. In addition to determining on October 27, 1984 that the Decedent was unable to take care of her own affairs, Dr. Conrade indicated that he had read the notes of Dr. Miranda. The testimony of Dr. Conrade indicated that he "suspects" that the Decedent was not competent on October 1, 1984 and that within a reasonable degree of medical certainty she was mentally impaired on September 6, 1984. When the case law established tests were put to the doctor, his responses were as follows: He could not say yes or no as to whether the Decedent knew the nature and extent of her property on September 26, 1984; knew those who would be the natural objects of her boundary; and further that she knew who she was transferring funds to at that time. He had no opinion as to whether the Decedent understood the practical effect of the transaction on September 26, 1984.

14. Totally disinterested witnesses, i.e., Sarah Dansky, the condominium area president, Maureen Meenan, of Atlantic Federal Savings and Loan; Frances Bessent of City Federal Savings and Loan; and a neighbor, Irwin Kaplan all seem to agree that the Plaintiff and the Decedent were close friends, that the Plaintiff did things for the Decedent and that the Decedent appeared to be normal and competent except for a leg problem which caused a limp.

15. Patricia Kalendek in addition to indicating that the Deceased had expressed some concern that the Plaintiff was trying to cause the Deceased to give the Plaintiff money also indicated that just before the Deceased went to the hospital in October the Deceased had talked with Ms. Kalendek on the phone and had declined an invitation to return to New York. The conversation did not indicate any lack of competence or mental ability on the part of the Deceased.

16. There was an issue raised with regard to the validity of a signature of the Decedent's and after having weighed and evaluated the testimony of the experts who testified after having been qualified as examiner's of questioned documents, the Court has no doubt but that the Decedent signed the signature cards and notes requesting the transfer of the funds to Plaintiff.

Based upon the foregoing Facts and Conclusions of Law, it is hereby

ORDERED AND ADJUDGED that the Plaintiff, ANN ARONSTAM, do have and recover from the Defendant, ALAN BERNSTEIN, as Personal Representative of the Estate of Verna M. Brady, Deceased, the sum of $42,263.90 principal, plus $10,975.74 interest

103

totaling $52,239.64 for all of which let execution issue forthwith. It is further

ORDERED AND ADJUDGED that the Court reserves jurisdiction for the purpose of determining costs with regard to this matter.

DONE AND ORDERED at West Palm Beach, Florida, this 3rd day of March, 1987.