113 So.2d 212 (1959)
Max LERNER, Appellant,
v.
Lydia E. LERNER, Appellee.
No. 978.
District Court of Appeal of Florida. Second District.
June 12, 1959.
*213 Morrice S. Uman, Tampa, for appellant.
Hall, Farnsworth & Rousseau, Tampa, for appellee.
OGILVIE, CLAUDE, Associate Judge.
This appeal and cross-appeal involve the right of ownership to some $7,000 cash withdrawn from a savings account, the proceeds of a life insurance policy, and forty-six shares of corporate stock. The appellant, Max Lerner, was a defendant below, and the appellee was the plaintiff. The appellee, Lydia E. Lerner, and her husband, Robert Lerner, during his lifetime, acquired certain cash by their separate endeavors, and deposited same in a savings bank in their names as joint tenants with right of survivorship; they also acquired jointly-owned real estate, the purchase price of which had been contributed by both; and said husband (now deceased), procured certain life insurance on his own life, naming his wife, the said Lydia E. Lerner, as the sole beneficiary in said policy. Subsequently, in 1957, said husband developed a heart condition while residing in Florida, and in May, 1957, travelled to New York for an operation therefor. While in New York, and not in the presence of either his wife, the appellee, *214 or his brother, Max Lerner, the appellant, he changed the beneficiary on said life insurance policy from appellee to appellant, notifying his said brother shortly thereafter, but giving no such notice to his wife. Thereafter said Robert Lerner returned to his residence in Florida, and while his brother, Max Lerner, appellant, was visiting him in Florida, in September, 1957, said Robert Lerner and his wife, appellee, conveyed to a newly organized corporation certain jointly-owned real estate, the said wife merely executing the deed at the request of her husband, without being told anything concerning the nature of the business; and as a part of the same transaction, and without the knowledge or consent of the said appellee, and without any consideration to her whatsoever, the said Robert Lerner received from said newly organized corporation forty-six shares of stock in same in his individual name; and immediately thereafter, and without the presence of his said wife, appellee, and in the presence of appellant, Max Lerner, the said Robert Lerner transferred and delivered the said forty-six shares of said stock to appellant, Max Lerner, as a gift, and without consideration. The said Robert Lerner died November 18, 1957, at Tampa, Florida.
Thereupon, the said Lydia E. Lerner, filed a complaint against Max Lerner, seeking the recovery of the proceeds of said life insurance policy, and the proceeds of said bank account, and the said forty-six shares of corporate stock.
Chancellor heard the testimony and received the proofs and decided by Final Decree that the deceased, during his lifetime, assigned the life insurance policy to appellant, Max Lerner, in the exercise of his volition and without duress or the practice of undue influence on the part of anyone; that the said Max Lerner, appellant, is the rightful owner of the proceeds of said life insurance policy by virtue of being the duly named beneficiary thereof. That because of the origin of the purchase price of the land in question, title to which was taken in the joint names of husband and wife (appellee), and the origin of the cash constituting the joint bank account in the names of husband and wife, with right of survivorship, and the peculiar phraseology of the agreement with the bank at the time of the deposit, and since said husband, during his lifetime, had attempted to convey and transfer said estate by the entireties, without the knowledge or consent of his said wife to his brother, Max Lerner, as a gift and without any consideration whatsoever  the Chancellor held that the appellant, Max Lerner, should return to the appellee, Lydia E. Lerner, the proceeds of said bank account and the forty-six shares of stock representing the estate by the entireties in the real estate conveyed by said husband and wife to the said newly organized corporation.
The record is replete with substantial and corroborating testimony and proofs, supporting the Chancellor in said Final Decree, with respect to each of the three properties in question; and there has been shown no reason by the appeal and cross-appeal why said Final Decree should be reversed or altered. This Court, after consideration of the record and briefs filed herein, affirms the Final Decree of the Chancellor.
There are many authorities in Florida supporting the Chancellor in his finding with respect to his awarding the proceeds of the bank account to the appellee, the surviving widow, Lydia E. Lerner.
Plaintiff's exhibit No. 11, is shown on page 70 of Vol. 1 of the original record brought up in said case No. 108 520-c, constituting a photostat copy of the contract of Lydia E. Lerner and Robert R. Lerner with the First Federal Savings and Loan Association at the time of the inception of said account. Since the phraseology of the contract is material to the determination of the nature of the account, which in this case, creates an estate by the entireties, with right of survivorship, the same is quoted here verbatim:
*215
 "Account No. 22018
Joint Account
(1) Lerner R. Robert 
 (Surname) (First name) (Middle name)
(2) Lerner Lydia E. 
The undersigned hereby apply for a membership and for a Savings share account in the First Federal Savings and Loan Association of Tampa, Tampa, Florida, and for the issuance of evidence of membership in the approved form in the joint names of the undersigned as joint tenants with the right of survivorship and not as tenants in common[*]. Receipt is hereby acknowledged of a copy of the charter and bylaws of said association. Specimens of the signatures of the undersigned are shown below and the association is hereby authorized to act without further inquiry in accordance with writings bearing any such signature, it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any share account in said association held by the undersigned, whether the other person or persons named in the certificate be living or not. The repurchase or redemption value of any such share account or other rights relating thereto may be paid or delivered in whole or in part to any one of the undersigned who shall first act, and such payment or delivery of a receipt or acquitance signed by any of the undersigned shall be a valid and sufficient release and discharge of said association.
 Signature (1) R. Robert Lerner (2) Lydia E. Lerner 
 Street Address P.O. Box 72 Same 
 City and State Lutz, Florida _______________________
 Telephone 99-4042 Occupation ____________
 Dated 6/26/56 Introduced by _________
[*] The certificate issued pursuant to this application for membership of joint holders must be filled out by inserting in the first blank space the name of the joint holders: for example. John Doe and Richard Doe, immediately followed by the words: as joint tenants with the right of survivorship and not as tenants in common. Joint tenants with the right of survivorship constitute one member as a partnership constitutes one member."
Under the foregoing circumstances incident to the establishment of the said bank account, with the use of the particular language in the contract with the bank, we feel that such created an estate by the entireties; and that when the husband withdrew the funds from the bank on his signature, without the knowledge or consent of his spouse, and gave same to his brother without receiving any consideration therefor, said brother, the appellant, Max Lerner, failed to gain any beneficial interest in said funds as against the claim of the surviving spouse. Andrews v. Andrews, 155 Fla. 654, 21 So.2d 205; Hagerty v. Hagerty, Fla., 52 So.2d 432.
The language used in the contract establishing the joint account with the bank clearly shows an intention of the parties to *216 create an estate by the entireties, with right of survivorship. The fact that the funds with which the joint account was originally established in the joint names of husband and wife, were contributed by the separate endeavors of said husband and wife; it is unnecessary in this case, as in other supporting precedents, to presume a gift from the husband to the wife of a portion of the funds establishing the joint account. The facts in this case are distinguishable in these several respects from the cases of: (1) In re Estate of Lyons, Fla., 90 So.2d 39; (2) Winters v. Parks, Fla., 91 So.2d 649. See also Madden v. Gosztonyi Savings & Trust Company; 331 Pa. 476, 200 A. 624, 117 A.L.R. 904.
Now, let us consider the conveyance of the estate by the entireties in land to the newly organized corporation by husband and wife, where the wife merely executed the deed at the husband's request and was not informed of the nature of the transaction by her husband or anyone else, and received no consideration therefor, but that the forty-six shares of stock in said newly organized corporation were issued to the husband individually (the appellee-wife not being present), in consideration for said conveyance of land, and immediately thereafter assigned said forty-six shares of stock to his brother, appellee  Max Lerner  as a gift, the said Max Lerner paying no consideration therefor, all of which was without the knowledge or consent of said wife  appellee. Appellee, Lydia E. Lerner, may trace the forty-six shares of stock (Lerner Groves, Inc.) into the hands of appellant, Max Lerner, who received same without paying any consideration therefor; and the estate by the entireties is preserved in said stock, as between the appellee and appellant. There was no understanding or agreement as to the division of such stock between appellee and her husband at the time she signed the deed conveying the estate by the entireties to Lerner Groves, Inc., or at any other time, as indicated by the following testimony:
"By Mr. Hall:
"Q. Mrs. Lerner, were you present at the time this deed was given? A. Yes. I signed the deed up in Mr. Uman's office.
"Q. Mr. Uman organized the Lerner Groves corporation? A. That's right.
"Q. Did you receive any monies from the Lerner Groves Corporation? A. No, I didn't receive any monies at all.
"Q. Did you have any understanding about what you were to receive? A. No, I never had any understanding. All I did was sign a deed."
The testimony of appellant, Max Lerner, in this regard is as follows:
"Q. Do you still own this land in Lithia? A. I still own it, as owner of shares in the stock of the Lerner Groves, Incorporated, which is the owner.
"Q. I see. Then, you are one and the same Max Lerner, along with your wife, Ada, who purchased the property with R. Robert Lerner and Lydia E. Lerner from the Boyettes? A. That is correct, sir.
"Q. Have you had any business relations with George Lerner * * *? A. Yes.
"Q. * * * within the past two or three years? A. Yes.
"Q. What was that? A. Bob and I decided we would like to have George come in as a part owner of the same Lerner Groves, Incorporated; and we proceeded to sell him, each of us, three shares of our stock. He has, therefore, six shares.
"Q. How was your stock issued in the corporation? A. At the time of actual issue of the stock, we had decided, about that time, we wanted *217 George to be a part owner; so, we arranged, at the original signing of the contract * * * I'm not a hundred per cent. correct sure, though * * * probably my attorney can correct me * * * that George was to get six shares, three of each, which I was to get forty-seven shares, together with Ada Lerner in the entirety * * * I think that's the term that's used here in Florida, joint owners in the entirety; Bob took forty-six for himself and one for Lydia; that's the way the stock was issued.
"Q. Do you know why Bob's stock was not taken in his and his wife's name, like you and Ada took yours? A. I wouldn't know.
"Q. It was all issued about the same time, wasn't it? A. Yes.
"Q. How was George's stock issued? A. It was issued directly to him.
"Q. Was Lydia present at the time the stock was issued? A. No.
"Q. Who was present? A. Bob was present, and George was present; I was present and Ada was present.
"Q. I see. Who has the books and records of Lerner Groves, Incorporated? A. I do.
"Q. Do you know whether or not any stock was issued to Lydia Lerner? A. There was one share of stock issued to Lydia Lerner, which was given to Bob Lerner that night.
"Q. What did Bob Lerner do with his stock? A. Which stock are you talking about? The forty-six shares?
"Q. The stock that was issued, after it was issued? A. He turned it over and endorsed it on the back and handed it to me and said, "I want you to have it."
"Q. Right then and there, right after it was issued? A. That is correct.
"Q. Did you tell Lydia that he had done that with this stock? A. No sir.
"Q. Did he endorse Lydia Lerner's stock over to you? A. No.
"Q. As I understood you to say, this stock * * * Lerner Groves was formed and organized, and the stock was issued, forty-seven shares of stock were issued to you and your wife, Ada, as an estate by the entirety? A. That's right.
"Q. And you say that shares were issued to R. Robert Lerner at the same time, and also to George Lerner, and that R. Robert Lerner, upon receiving his, turned them over and endorsed it, turned them over to you right then and there? A. That's right, sir.
"Q. Okay, that's what I wanted to get clear. R. Robert Lerner and Lydia E. Lerner had in the land which went into the corporation, as by them, was an estate by the entirety, didn't you? A. I don't actually remember. I know both things were listed, but whether or not it was an estate by the entirety or joint tenancy or equal partnership, I don't recall.
"Mr. Uman: Estate by the entirety.
"The witness: It's by the entirety, my attorney says."
In the case of Anderson v. Carter, Fla. App., 100 So.2d 831, 833, this Court cited with approval the case of Madden v. Gosztonyi Savings & Trust Company, supra, quoting therefrom as follows:
"The authorities thus cited would seem to show that either spouse presumptively has the power to act for both, so long as the marriage subsists, in matters of entireties, without any specific authorization, provided the fruits or proceeds of such action inure to the benefit of both and the estate is not terminated. But neither may by *218 such action destroy the true purpose of the estate by attempting to convert it or a part of it, in bad faith, into one in severalty.
"As stated, where the estate stands in the name of husband and wife there is no implication of agency to conclude the estate. Thus where a husband and wife hold a mortgage, the husband has no authority to take a deed to himself and in that way destroy the wife's interest in the mortgage. Sparrow v. Mowers, supra (Sparrow, to Use of Geiger v. Mowers, 315 Pa. 460, 173 A. 273). Nor is there a presumption of agency in the wife to convey real estate held by entireties without the husband's joinder. * * *"
With respect to the ownership of the proceeds of the life insurance policy, factual circumstances concerning the deceased's mental capacity at the time he changed the beneficiary from the name of his wife of his brother, the appellant; the Chancellor heard and saw the witnesses testify, including a representative of the life insurance company. The life insurance company was dismissed as a party-defendant prior to the entry of the Final Decree herein. Said change of beneficiary was made by the deceased when neither the appellant nor the appellee were present. The Chancellor found that said change of beneficiary was made voluntarily as the exercise of full mental capacity and volition on the part of the insured; finding that the appellant, Max Lerner, is the rightful owner of the proceeds on said life insurance policy, in which we heartily concur.
The Chancellor was eminently correct on the several phases of the case in the entry of the Final Decree; and he is therefore, affirmed.
KANNER, C.J., and ALLEN, J., concur.