573 So.2d 892 (1990)
In re the GUARDIANSHIP OF Catherine S. MEDLEY, Incompetent.
Patricia J. EMIDDIO, Individually, and As Personal Representative of the Estate of Catherine S. Medley, Deceased; Pamela Nadeau, F/K/a Pamela Donoher and Cynthia McLaren, Appellants,
v.
SOUTHEAST BANK, N.A., Individually and As Guardian of the Property of Catherine S. Medley, Incompetent, Appellee.
No. 89-03080.
District Court of Appeal of Florida, Second District.
December 12, 1990.
Rehearing Denied February 4, 1991.
*894 Wm. Fletcher Belcher and Angela M. Adams of Law Offices of Wm. Fletcher Belcher, St. Petersburg, For appellants.
William F. Blews of William F. Blews, P.A., St. Petersburg, and Johnson S. Savary of Dykema Gossett, Sarasota, for appellee.
LEHAN, Judge.
At the heart of this case, which involves twelve joint savings and loan association accounts totaling $260,690.86 with signature cards authorizing withdrawals by either of the two joint owners, is whether one owner may withdraw all the funds and properly appropriate them to his own use without the consent of the other. The order from which this appeal is taken answers, in effect, yes. We reverse.
This is an appeal from an order of the trial court dismissing with prejudice petitioners' fourth amended petition to surcharge appellee Southeast Bank N.A., guardian of the property of Katherine S. Medley, incompetent, who is now deceased. Petitioner Patricia Emiddio, daughter of Mrs. Medley, filed the petition and this appeal as the personal representative of Mrs. Medley's estate. She and the other petitioners, Pamela Nadeau and Cynthia McLaren, who are granddaughters of Mrs. Medley, also filed the petition and this appeal individually as beneficiaries of eight Totten trusts[1] which had allegedly been established in savings and loan association accounts in the names of Mrs. Medley and Mr. Medley (Ewen E. Medley) as co-trustees. Six of those accounts with balances totaling $144,403.42 are alleged to have been created for the benefit of Patricia Emiddio and one each with balances of $10,006.03 and $10,000.00, respectively, are alleged to have been created for the benefit of Pamela Nadeau and Cynthia McLaren. Petitioners seek to surcharge appellee for damages to Mrs. Medley's guardianship and probate estates and to petitioners individually as a result of appellee's alleged breach of its duties as guardian.
The breach is alleged to have occurred from the appellee's failure to safeguard the interests of Mrs. Medley in twelve savings and loan association accounts which were maintained in the names of Mr. and Mrs. Medley, including the eight Totten trust accounts referred to above, when Mr. Medley, who subsequently predeceased Mrs. Medley, withdrew all the funds from the accounts and appropriated them to his own use with the knowledge and participation of appellee in the manner described below. Those withdrawals are alleged to have been pursuant to provisions in the account signature cards authorizing either Mr. or Mrs. Medley to make withdrawals. It is alleged that three of the accounts with balances totaling $72,183.15 were joint tenancies with right of survivorship, one with a balance of $24,098.26 was a tenancy by the entireties, and the foregoing eight Totten trust accounts totaling $164,409.45 were tenancies by the entireties subject to Totten trusts. The petition does not allege the original source or sources of the funds in the accounts, i.e., whether they came from Mr. or Mrs. Medley's individual funds or from their joint funds or a combination.
More specifically, the petition alleges that Mrs. Medley was mentally incompetent from June 15, 1983 until her death on June 24, 1985 and that she was formally adjudicated incompetent in December, 1983 at which time appellee was appointed guardian of her property. It is alleged that between July, 1983 and December, 1983, Mr. Medley withdrew the funds totaling $101,728.01 from six of the accounts. It is further alleged that in January, 1984, Mr. Medley withdrew the funds totaling $158,962.85 from the remaining six accounts and that he placed the funds from *895 all the accounts in a trust for himself during his lifetime with the remainder after his death to go to his half-sister and his housekeeper.
In alleging wrongdoing on the part of appellee the petition alleges that appellee knew or should have known of Mr. Medley's withdrawals from the accounts and that his testamentary plan was different from that of Mrs. Medley whose beneficiaries were the individual petitioners; that appellee's failure to safeguard Mrs. Medley's ownership interests in the account funds (which, according to the petition, appellee knew was important and planned to do through steps including a petition to partition those funds but did not do) was a breach of its duty as guardian of her property; and that appellee, who was also trustee of Mr. Medley's trust, took possession of and improperly distributed the funds upon Mrs. Medley's death (after she is alleged to have become entitled to the funds by having survived Mr. Medley) to Mr. Medley's half-sister and housekeeper.
The trial court ruled that the petition failed to state a cause of action. The apparent reasoning was that because the signature cards authorized either Mr. or Mrs. Medley to withdraw funds from the accounts, Mrs. Medley had no ownership interests therein which were traceable to the funds withdrawn by Mr. Medley and therefore appellee breached no duty in failing to safeguard her interests. Stated in another way, the trial court ruled that since Mr. Medley had, in the trial court's words, "absolute authority" under the signature cards to withdraw the funds from the accounts, the withdrawals were not shown to have been wrongful, therefore the petition could not state a cause of action against the guardian. The trial court apparently concluded that Mr. Medley's right to withdraw the funds from the accounts gave him the right to appropriate the funds to his own use without any accountability to his wife. For present purposes the essence of the trial court's ruling appears to have been the conclusion that the husband's withdrawals of the funds terminated any interests of his wife therein. The trial court also ruled that the individual petitioners, as beneficiaries of the Totten trusts, did not have standing to bring the petition against the guardian.
In reversing we hold that the existence of the provisions in the signature cards authorizing the withdrawals by Mr. Medley did not preclude ownership interests of Mrs. Medley in the funds withdrawn from the accounts and therefore did not preclude a cause of action under the alleged circumstances of this case against her guardian for a breach of duty to safeguard those interests, as we will explain. We also hold that under the allegations the Totten trust beneficiaries, as holders of vested interests in the withdrawn funds, would not lack standing to bring the petition, as we will also explain.
The remainder of this opinion will (A) explain the legal principles requiring a reversal and (B) conclude by summarizing our view of the underlying import of case law in this area, which has been described as a morass. Section (A) explains not only why we disagree with the trial court that the signature card provisions authorizing withdrawals by either spouse precluded Mrs. Medley from having any continuing ownership interests in the funds withdrawn by Mr. Medley but also why we have concluded that Mrs. Medley could be shown to have had such continuing ownership interests and why appellee could be shown to have had and breached a duty to safeguard those interests. In its explanation of those reasons section (A) will be divided into three subsections.
Subsection (A)(1) will deal with the funds withdrawn by Mr. Medley and appropriated to his own use from the one account alleged to have been held by Mr. and Mrs. Medley as a tenancy by the entireties and the three accounts alleged to have been held by them as joint tenants with right of survivorship and will explain that Mrs. Medley can be shown to have had continuing ownership interests in those funds. (No question has been raised, nor does any appear to exist, that Patricia Emiddio, as Mrs. Medley's personal representative, has standing to sue concerning alleged ownership interests of Mrs. Medley in those four *896 accounts.) Our reasoning in subsection (A)(1) will necessarily be in considerable depth to explain governing principles not always clearly brought out in the case law. Those principles include concepts having as their foundations venerable incidents of property ownership which in our view were disregarded in the district court of appeal case which supports the trial court's ruling and which, for reasons we will explain, we conclude mistakenly failed to follow controlling precedent.
Subsection (A)(2) will deal with the funds withdrawn by Mr. Medley and appropriated to his own use from the eight accounts alleged to have been held by Mr. and Mrs. Medley as tenancies by the entireties subject to Totten trusts and will explain that Mrs. Medley can be shown to have had continuing ownership interests in those funds. Subsection (A)(2) will also explain that the individual petitioners could be shown to have vested interests in those ownership interests and standing to sue for damages thereto.
Subsection (A)(3) will describe in general terms the nature of the guardian's duty under the allegations, the breach of which would expose the guardian to a surcharge, if ownership interests of the types referred to in subsections (A)(1) and (A)(2) are shown to have existed.

(A) The Legal Principles Requiring a Reversal

(1) An Interest of One Account Owner in a Joint Account Will Continue in the Funds When All the Funds Are Withdrawn by the Other Owner and Appropriated to the Other Owner's Own Use Without the Agreement of Both Owners if the Account Is Owned as a Tenancy by the Entireties or a Joint Tenancy With Right of Survivorship, Notwithstanding the Right of Either Owner to Withdraw From the Account.

We conclude, for the reasons explained in this subsection (A)(1), that under the allegations of the petition Mrs. Medley could be shown to have had ownership interests which did not terminate upon Mr. Medley's withdrawals of all the funds from the one account alleged to have been held as a tenancy by the entireties and the three accounts alleged to have been held as joint tenancies with right of survivorship. In this subsection we will explain that (a) controlling case law establishes the continued existence of an interest of one joint account owner in the funds when all the funds are withdrawn by the other owner and appropriated to the other owner's own use without the agreement of both owners if the account is owned as a tenancy by the entireties or a joint tenancy with right of survivorship, notwithstanding the right of either owner to withdraw from the account; (b) an underlying rationale of the controlling case law may be the recognition of what are called unity characteristics established by the law in certain joint forms of property ownership; (c) signature card withdrawal authorizations for joint accounts protect the financial institutions and are irrelevant to a determination of the form of ownership of such accounts; (d) section 665.063(1)(a), Florida Statutes (1987), concerning joint accounts in savings and loan associations protects the financial institutions and is not conclusive of ownership rights as between the account holders; (e) the district court of appeal case in point supporting the trial court's result disregarded, in our view, controlling case law and misapplied other case law; and (f) the intent of the account creator(s) ultimately controls the outcome of a case like this.

(a) Controlling Case Law Establishes the Continued Existence of an Interest of One Joint Account Owner in the Funds When All the Funds are Withdrawn by the Other Owner and Appropriated to the Other Owner's Own Use Without the Agreement of Both Owners if the Account is Owned as a Tenancy by the Entireties or a Joint Tenancy With Right of Survivorship, Notwithstanding the Right of Either Owner to Withdraw From the Account.

As established by the controlling case law when the form of ownership of a joint account is a tenancy by the entireties, an interest of one account owner will continue *897 in the funds when all the funds are withdrawn by the other owner and appropriated to the other owner's own use without the agreement of both owners, notwithstanding the right of either owner to withdraw from the account. In Lerner v. Lerner, 113 So.2d 212 (Fla. 2d DCA 1959), the interest of a wife in funds withdrawn by her husband from bank accounts was recognized to have continued in the wife after the withdrawals because the accounts were found to have been held by the husband and wife as tenants by the entireties, notwithstanding signature card provisions permitting the withdrawals. And in In re Estate of Lyons, 90 So.2d 39 (Fla. 1955), the interest of a wife in an account into which the husband had placed funds in the names of the husband or the wife and which had a signature card providing in effect for withdrawals by either the husband or the wife[2] was not recognized to have continued in the account funds after the husband had had the wife's name removed from the account and thereafter died. The reason was that the account was found to have not been held by them as an estate by the entireties. See also Winters v. Parks, 91 So.2d 649 (Fla. 1956).
The husband's removal of the wife's name from the account in Lyons had for present purposes the same effect as the husband's withdrawals of funds from the accounts in Lerner (and in the alleged case at hand). That is, in both Lyons and Lerner the husband sought to take away the wife's interest in the account funds without her consent. In each case the court did not determine that the question of whether or not the husband successfully took away the wife's interest depended upon signature card language which permitted either husband or wife to withdraw funds from the account. In each case the court determined that the answer to that question depended upon whether the account had been held by them as tenants by the entireties. See also Bailey v. Smith, 89 Fla. 303, 103 So. 833 (Fla. 1925), in which the following statements by the Florida Supreme Court concerning bank accounts held as tenancies by the entireties are pertinent:
[W]hether ... [an estate by the entireties] exists as the result of the acquisition of property by and in the names of both husband and wife must be determined by a consideration of the nature and terms of the transaction as portraying the intent of the parties and of the rules of law applicable thereto.
89 Fla. at 307, 103 So. at 835.
Neither spouse can alien or forfeit any part of the estate [in a bank account held as a tenancy by the entireties] without the assent of the other so as to defeat the right of the survivor.
89 Fla. at 306, 103 So. at 834.
Similarly, as shown by other case law, when the form of ownership of a joint account is a joint tenancy with right of survivorship, an interest of one account owner will also continue in the funds when all the funds are withdrawn by the other owner and appropriated to the other owner's own use without the agreement of both owners, notwithstanding the right of either to withdraw from the account.[3]
Wiggins v. Parsons, 446 So.2d 169 (Fla. 5th DCA 1984), involved an account held by two sisters and a brother as a joint tenancy with right of survivorship, the funds from which were entirely withdrawn by one sister who then, to the exclusion of the other sister, divided the funds among herself, the brother, and a third sister. An interest of the other sister was held to continue in the withdrawn funds, notwithstanding the *898 right of any of the first two sisters and the brother to make withdrawals and notwithstanding the holding of the Wiggins majority opinion that the joint tenancy and the right of survivorship were terminated by the withdrawal. That interest was held to be a moiety of the funds.
McGillen v. Gumpman, 171 So.2d 69 (Fla. 3d DCA 1965), involved bank accounts in the names of a husband and wife, each having the right to withdraw, which were referred to by the court as joint accounts having rights of survivorship and which we conclude were held as joint tenancies with right of survivorship. The court found that the wife's withdrawals of all the funds from the accounts did not deprive the husband of his interests in the funds during his lifetime; the ultimate right to the funds was found to be in the wife when she survived the husband. Thus, McGillen, in contrast to the Wiggins majority opinion, found in effect that the wife's withdrawals did not terminate the joint tenancy and right of survivorship. In fact, McGillen specifically disagreed with Steinmetz v. Steinmetz, 130 N.J. Eq. 176, 21 A.2d 743 (1941), in which the New Jersey court held that the withdrawal by one tenant of the funds in an account held as a joint tenancy with right of survivorship from which each tenant was entitled to withdraw terminated the joint tenancy and the right of survivorship. 171 So.2d at 71.
The Wiggins dissenting opinion took the position that the element of survivorship, as well as the joint tenancy, should have continued after the wrongful withdrawal and disposition by one sister of all the funds in that case, so that thereafter the surviving tenant would take the funds. 446 So.2d at 174.[4] At the same time, that dissenting opinion appears implicitly to have recognized that a rightful withdrawal by one tenant, i.e., a withdrawal only of that tenant's moiety of the funds, would have terminated the joint tenancy from the standpoint of that one of the three tenants, i.e., would have severed that tenant's interest in the joint tenancy and terminated his or her right to survivorship in the remaining account funds and the other tenants' right to survivorship in that moiety.[5] (The basis for those differing outcomes depending upon whether the withdrawal was of all the funds or only a moiety lies in the peculiar nature of a joint tenancy with right of survivorship; that is, "Joint tenants, by reason of the combination of entirety of interest with the power of transferring in equal shares, are said to be seized per my et per tout or by the half and the whole, but tenants by the entirety are seized per tout et non per my and the conveyance by either husband or wife will have no effect against the other if [the other becomes the] survivor." Moskowitz v. Marrow, 251 N.Y. 380, 167 N.E. 506, 509 (1929) (quoting Matter of McKelway's Estate, 221 N.Y. 15, 116 N.E. 348, 349 (1917) (Pound, J.)). See also 41 C.J.S. Husband and Wife § 33b (1944).) But the Wiggins case did not involve a rightful withdrawal, nor does the alleged case at hand.
We agree with the position of the Wiggins dissenting opinion. Our principal rationale is that the intent of the creator(s) of an account under such a form of ownership should control. As the Wiggins dissenting opinion said, preserving the joint tenancy under the circumstances of that case, which were much like those alleged in this case,
prevents one unhealthy and unscrupulous joint tenant from defeating the donor's intent by withdrawing the joint funds in order to intentionally and wrongfully terminate the joint tenancy *899 and the survivorship rights of the other donee tenants contrary to the intent of the donor that the other donee-tenants succeed to the funds rather than the estate of the donee-tenant who first dies.
446 So.2d at 175. See also Gatewood v. Griffin, 549 P.2d 829 (Okla. App. 1976), which is cited in the Wiggins dissent, 446 So.2d at 174 n. 2, and which cites and discusses like results in In re Will of Filfiley, 63 Misc.2d 824, 313 N.Y.S.2d 793 (1970); Watkins v. McComber, 208 Okla. 352, 256 P.2d 158 (1953); and Wallace v. Riley, 23 Cal. App.2d 669, 74 P.2d 800 (1938). See, in addition, 48A C.J.S. Joint Tenancy § 20 (1981).
The result endorsed by the Wiggins dissenting opinion is not free from potential problems, as the Wiggins majority opinion notes, 446 So.2d at 171-72, nor, for that matter, is the Wiggins majority opinion. But we are not convinced that those problems may not be reasonably managed. And, as indicated above, that result in our view best accords with the intent of the creator(s) of an account held as a joint tenancy with right of survivorship. As to the comment in the Wiggins majority opinion that it appears strange that under the New York view, with which the Wiggins dissent is consistent (as we noted in footnote 5 supra), a withdrawal of more than a tenant's share would not terminate the joint tenancy whereas a withdrawal of a tenant's share would, 446 So.2d at 171, it seems to us that those differing results differentiate between the effects of rightful and wrongful withdrawals.
But under either the view in Judge Sharp's thoughtfully written majority opinion in Wiggins or that in the thoughtfully written dissenting opinion of Judge Cowart in that case, petitioners in this case have stated a cause of action. That is, because, in contrast to the situation in Wiggins, Mrs. Medley, the nonwithdrawing party to the accounts in this case, survived Mr. Medley, choosing between the majority and dissent in Wiggins bears only upon how much of the funds from the accounts in this case may be traced by petitioners under their allegations.
Also showing that a signature card provision authorizing withdrawals by either of two persons named in an account does not give to the one withdrawing the funds ownership thereof to the exclusion of the other is Constance v. Constance, 366 So.2d 804 (Fla. 3d DCA 1979). In that case a daughter was found to have had no ownership interest in funds she had withdrawn from accounts which had been in the names of the daughter and her father even though the signature cards permitted her withdrawals. The reason was that the accounts were found to have not been held as joint tenancies but, pursuant to the intent of the parties, to have been solely owned by the father.
For additional support for our conclusions in this subsection (A)(1)(a), see Annotation, Right of One Party to a Joint Bank Account to Follow Money Withdrawn by the Other, 77 A.L.R. 799, 800 (1932) ("If the relation of the parties to the bank account is that of joint tenants [as contrasted with tenants in common], it would seem logically to follow that if one of them withdrew part of the funds, the other could not, merely by that act, be devested of his interest in the money withdrawn or in the property purchased therewith, but would have a right to follow the same. This would appear to be true even though, as regards the bank, either of the parties had the right to make the withdrawal, under the terms of the deposit account. However, the agreement or understanding of the parties may vary the above conclusion."). See also Annotation, Effect of Incompetency of Joint Depositor Upon Status and Ownership of Bank Account, 62 A.L.R.2d 1091 (1958); Annotation, Power of One Party to Joint Bank Account to Terminate the Interests of the Other, 161 A.L.R. 71 (1946).

(b) An Underlying Rationale of the Controlling Case Law May Be the Recognition of Unity Characteristics in Certain Joint Forms of Property Ownership.

An underlying rationale of the controlling case law may be the recognition of unity characteristics established by the law *900 in certain joint forms of property ownership. If one joint account owner were permitted to appropriate all the account funds to his own use without the other's consent, that would be contrary to what Lyons refers to as "the characteristics of joint tenancy." 90 So.2d at 41. Lyons points out that those characteristics of both tenancies by the entireties and joint tenancies with right of survivorship, are "unity of possession, sameness of interests, identicalness and simultaneousness of origin, and survivorship... ." Id. See also Winters, 91 So.2d at 651.[6] While a tenancy by the entireties has the additional unity characteristic of "oneness of person" which a joint tenancy with right of survivorship does not have, Lyons, 90 So.2d at 41, no persuasive reason appears why that difference should call for a different result in this case for the accounts allegedly held as joint tenancies with rights of survivorship as compared to the account allegedly held as a tenancy by the entireties. But see Wiggins, 446 So.2d at 173 (dismissing Lerner from consideration as one of the "older cases" which involved "husband-wife joint accounts" but not explaining further).
In any event, as indicated in subsection (A)(1)(a) above, the Florida law we follow concerning accounts owned as tenancies by the entireties appears established, and our principal rationale concerning accounts owned as joint tenancies with right of survivorship is to accord with the intent of creator(s) of such accounts.

(c) Signature Card Withdrawal Authorizations for Joint Accounts Protect the Financial Institutions and Are Irrelevant to a Determination of the Form of Ownership of Such Accounts.

Appellee contends on appeal that because the signature cards gave Mr. Medley the right to withdraw the funds from the accounts, he had the absolute right to the funds after they were withdrawn. However, as we have indicated, signature card provisions permitting withdrawals of account funds by either of two owners of an account are not determinative of the kind of ownership interest in the funds in the account and therefore are not determinative of whether one of the two account owners may follow funds withdrawn without that owner's consent from the account by the other owner. That is, such provisions do not preclude the continued existence of a tenancy by the entireties or joint tenancy with right of survivorship interest of the nonwithdrawing party in the withdrawn funds. See Lyons; Wiggins; McGillen; Lerner.
Those provisions of the signature cards in this case are alleged to have been only for the protection of the savings and loan associations and for the convenience of the parties and to have not affected the kind of ownership interests held in the account funds. Those allegations reflect the law in Florida. In Madden v. Gosztonyi Sav. & Trust Co., 331 Pa. 476, 200 A. 624 (Pa. 1938), the reasoning of which was adopted by the Florida Supreme Court in Hagerty v. Hagerty, 52 So.2d 432, 434 (Fla. 1951), and was reaffirmed in First National Bank of Leesburg v. Hector Supply Co., 254 So.2d 777, 781 (Fla. 1971), the court distinguished between the effect of such a provision as between the owners themselves and as between the owners of the account and the financial institution. Madden pointed out that such a provision "establishes the immunity of the ... bank" against a claim of wrongfully permitting a withdrawal by one spouse "but ... in no way affects the rights as between the husband and wife." 331 Pa. at 490, 200 A. at 631. "[T]he bank, acting in good faith, is protected when funds are withdrawn by either [spouse]." Id.

(d) Section 665.063(1)(a), Florida Statutes (1987), Concerning Joint Accounts in Savings and Loan Associations Protects the Financial Institutions and is Not Conclusive of Ownership Rights as Between the Account Holders.

*901 Appellee cites in its argument section 665.063(1)(a), Florida Statutes (1987). That section provides, among other things, that funds in a savings and loan association account in the names of two persons "in such form that the moneys in the account are payable to either or the survivor ... shall be the property of such persons as joint tenants" and that an account in such form "shall ... be conclusive evidence ... of the intention ... to vest title to such account ... in [the] survivor... ." However, we do not perceive, nor has appellee pointed out, how the provisions of that statute could support its contention that Mrs. Medley did not have continuing interests in the account funds after Mr. Medley's withdrawals. In any event, that statute protects the financial institution and is not conclusive of ownership rights as between the account holders. See Drozinski v. Straub, 383 So.2d 301, 305-06 (Fla. 2d DCA 1980) (referring to that statute before its renumbering as 665.063). See also Moskowitz, 167 N.E. at 511 (Cardoza, C.J., concurring) which is cited in Drozinski, 383 So.2d at 305; Wiggins, 446 So.2d at 174 n. 2 (Cowart, J., dissenting); Seidl v. Estate of Michelsen, 487 So.2d 336, 338 (Fla. 4th DCA 1986); Constance, 366 So.2d at 807-08.

(e) The District Court of Appeal Case in Point Supporting the Trial Court's Result Disregarded, In Our View, Controlling Case Law and Misapplied Other Case Law.

Appellee understandably relies strongly upon Simpson v. Schoenemann, 263 So.2d 854 (Fla. 1st DCA 1972). That case involved savings accounts in the names of a husband and wife. Before her death the wife had withdrawn all the funds from the accounts and had given them to her niece. The court, because the signature cards for the accounts had given the wife the right to withdraw the funds, held that the husband was not entitled to recover the funds from the niece. However, in our respectful view Simpson reached a result contrary to the law which had then been established and thereafter continued in effect. See Lyons; Lerner; Wiggins; Constance; McGillen; 77 A.L.R. at 800.
Simpson did not cite Lerner or Lyons which had been decided long before Simpson was decided. Indicating that Simpson, in fact, overlooked the law represented by those cases which is discussed above are the statements in the Simpson opinion that no question was involved in that case "as to the character [nature of ownership interest] of the account" and that
[w]e are here concerned only with whether either spouse possesses the legal right to withdraw all or any part of a bank account established in their joint names when the documents executed by the parties give each the right to withdraw all or any part of the account. Under these circumstances, it is immaterial whether the account is held in an estate by the entireties or a joint tenancy with right of survivorship.
263 So.2d at 857.
That Simpson overlooked that law (and is also inconsistent with the prior McGillen case and the subsequent Constance and Wiggins cases) is particularly shown from comparing a three-step analysis of Lyons and Lerner (which could similarly apply for present purposes to the joint ownerships involved in Wiggins and McGillen) with Simpson, as follows.
Under Lyons and Lerner (a) the funds in a joint account held by a husband and wife as tenants by the entireties may be withdrawn by either joint owner pursuant to a signature card providing for such withdrawals, (b) without precluding or destroying the joint nature of the ownership of the funds, therefore (c), because of the characteristics of such a form of joint ownership, one owner withdrawing all the funds may not appropriate them to his or her own use without the consent of the other. Simpson is of course consistent with step (a) of that analysis but disregards steps (b) and (c). In fact, the part of the Simpson opinion which is closest to stating the holding in that case, the last sentence in that opinion's analysis of its legal basis, 263 So.2d at 858, refers only to what we have called above step (a). The portions of that opinion which we have quoted above purport to *902 eliminate step (b) as immaterial. That last sentence in the Simpson analysis is, in pertinent part, "the signature cards contain a sufficient statement of permission for one spouse to act for the other, so that Mrs. Simpson was within her contractual rights in closing out the seven accounts before she died." 263 So.2d at 858. Step (c) is disregarded by Simpson entirely, and in fact that sentence does not even state the actual holding represented by the result in Simpson that the wife was not only entitled to withdraw the funds but could appropriate them to her own use by giving them to her niece. The sentence seems to assume, contrary to then existing and subsequent case law, that the right of one spouse to withdraw funds from an account held in the names of a husband and wife is necessarily the right to appropriate the funds to that spouse's own use.
We recognize that Simpson's apparent reliance upon such a signature card provision has a certain facial logic. But in so limiting its perspective Simpson does not recognize the significance of a tenancy by the entireties nature of a husband and wife account (if that was its nature under the facts of a particular case, which Simpson deems immaterial), or, for that matter, the nature of an account held as a joint tenancy with right of survivorship, in which both joint owners have interests which, as established by the case law, may not be defeated by one alone.
Thus, Simpson seems to disregard the reconciliation represented by Lyons and Lerner (and Hector Supply and especially Madden, as will be explained below) of the otherwise seemingly inherent conflict between the nature of a tenancy by the entireties account and such a signature card provision. That is, the fact that funds in such an account may be withdrawn by either spouse may be considered to conflict inherently with the nature of the ownership interest under which such an account is owned by both spouses as a unity. That conflict has been characterized as an anomaly in light of real property concepts under which the tenancy by the entireties form of ownership was originally created.
The concept of a tenancy by the entireties in bank accounts is anomolous [sic] as there is no joint seisin, in fact no seisin at all, and no joint control as in the corresponding estate in real property. Since either party normally can withdraw funds from the account, it differs radically from the similar real property interest where one of the parties is unable singly to convey even his own interest.
Boyer, Ankus, and Friedman, Survey of Real Property Law in Florida, XII U.Miami L.Rev. 499, 512 (1958) (footnote omitted).
Simpson might be viewed as having acceded to that anomaly, or conflict, by implicitly having assumed, inconsistently with step (b) of the above analysis of Lyons and Lerner, that the existence of that kind of signature card provision precluded a tenancy by the entireties (or joint tenancy with right of survivorship) nature of the ownership interest in the account and that therefore there was no right of the nonwithdrawing owner to trace funds withdrawn by the other. That is, while Simpson, as noted above, referred to the form of ownership under which the account was held as "immaterial," the view might be taken that that effectively meant that due to the signature card provision there could have been no form of ownership of the accounts which could have given the nonwithdrawing owner a continuing interest in the withdrawn funds. This view of Simpson would bring Simpson more in line with the Wiggins majority opinion which held that a joint tenancy in a bank account terminates upon the withdrawal of all the funds by one tenant without the consent of the other tenants. But Simpson would still be unsupported by Wiggins  or by any other Florida case law of which we are aware  because the Wiggins majority also held, as we have pointed out, that a moiety in the withdrawn funds continued to be owned by the nonwithdrawing tenant.
As we have said, Simpson's approach (and that of the trial court in the case at hand) giving controlling effect to such a signature card provision may well seem facially to make logical sense considering that type of provision in isolation. That is, *903 if such a provision gives either joint owner the right to withdraw the funds, why can't the withdrawing owner dispose of the funds as he or she wishes without the consent of the other and without any interest of the other continuing in the withdrawn funds? Why does not such a provision in effect give one owner power of attorney to appropriate the funds to his or her own use and preclude the unity elements which are requisites to both tenancies by the entireties and joint tenancies with right of survivorship? Simpson seems to find support for that approach in a part of Hector Supply, the case upon which Simpson entirely relied, but in our view, as we will explain below, did so mistakenly.
In that regard Simpson said, "The heart of the decision in the Hector Supply case is, as we read it, the fact that Sec. 708.09, Florida Statutes, F.S.A. allows for the passage of powers of attorney between the spouses." 263 So.2d at 857. While that aspect of Hector Supply could be considered the heart of that case, it not only did not support the Simpson result but called for a result contrary to that reached in Simpson, as we will explain below. That approach of Simpson to this kind of case was and is contrary to the law which requires that the importance of retaining the joint tenancy nature of the ownership interest in the funds in such an account be recognized, notwithstanding such a signature card provision.
As we have said, Simpson in our view mistakenly relied upon Hector Supply. Hector Supply instead reflects, consistently with step (b) in the foregoing analysis of Lyons and Lerner, that the right of one spouse to withdraw funds from an account held with the other spouse under a signature card provision permitting withdrawals by either does not destroy or preclude a tenancy by the entireties nature of the ownership interest in the account. 254 So.2d at 781. See also Judge Cowart's dissent in Wiggins as to a joint tenancy with right of survivorship. 446 So.2d at 174, 175. But Hector Supply did not involve, or even refer to, step (c) of that analysis which was in issue in Lyons and Lerner, as well as in Simpson and the case at hand. Hector Supply in effect used what we have called steps (a) and (b) of that analysis as bases for holding something different from what was involved in Lyons, Lerner, Simpson, and this case, i.e., as bases for holding that an account held by a husband and wife as tenants by the entireties may not be garnished by the creditors of only one of them.
Actually, a principal thrust of Hector Supply, which is consistent with and cites Lyons, is that the right of one spouse to withdraw funds from an account held as a tenancy by the entireties does not defeat the tenancy by the entireties nature of the ownership of the account funds. Hector Supply upheld the tenancy by the entireties nature of an account against a third party claim originating against only one spouse, notwithstanding the right of that spouse to withdraw the funds, as did Lerner against a third party claim originating from a transfer of the funds by only one spouse (and as Lyons would have done if the account in that case had been found to be a tenancy by the entireties).
In fact, Hector Supply explicitly determined that a signature card provision permitting withdrawals of the funds by either spouse would not defeat the tenancy by the entireties nature of the account. As Hector Supply said in that regard,
We do not agree that the arrangement for individual withdrawal defeated the form of the ... account as an estate by the entireties as a matter of law.
254 So.2d at 779.
For the foregoing reasons, we find that the ... signature card was compatible with the form required of an estate by the entirety in a bank account.
254 So.2d at 781. The reasoning behind that determination came from what Simpson, 263 So.2d at 857, referred to, as we have noted above, as the "heart" of the Hector Supply opinion, i.e., the statement in Hector Supply that each spouse may pursuant to such a signature card provision act under a power of attorney in the withdrawal of funds from a tenancy by the *904 entireties account. 254 So.2d at 781. But, contrary to the implicit Simpson conclusion, that statement did not mean that each spouse has a power of attorney to act contrary to the nature of the ownership interests under which the account is held and to appropriate the funds to his or her own use. It meant only that each spouse has a power of attorney to act for both in withdrawing the funds; as between the parties to the account the nature of the ownership interests continues in the withdrawn funds without derogation of the unities which are elements of a tenancy by the entireties.
To recognize the different nature of a power of attorney under these circumstances as compared to a power of attorney from one individual to another individual under other circumstances it is necessary to recognize the nature of a tenancy by the entireties as involving a unity of interest in both tenants. That is, in a tenancy by the entireties the husband and wife are, as Blackstone said, "considered as one person in law, they cannot take the estate by moieties, but both are seized of the entirety, per tout et non per my: the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other... ." Madden, 331 Pa. at 481, 200 A. at 627 (Pa. 1938) (the reasoning of which was, as we have said, adopted by the Florida Supreme Court in Hagerty and reaffirmed in Hector Supply), quoting Blackstone (apparently 2 W. Blackstone, Commentaries on the Laws of England at 182 (Lewis's Ed. 1898)). Thus, a power of attorney in an account signature card from one tenant of a tenancy by the entireties to another tenant is to be interpreted in law to be, as between the tenants, necessarily a power of attorney to act as a unity for both tenants.
In this regard, Hector Supply, discussing Hagerty, referred to the court's conclusion in that case
that the unity of possession or control would not preclude one spouse from acting for the other because when an account was payable on the order of the husband or his wife, there was an immediate expression of authority of agency for either to act for both. In so deciding, we adopted the reasoning given in Madden v. Gosztonyi Sav. & Trust Co., 331 Pa. 476, 200 A. 624 (1938), and rejected the contrary reasoning espoused in Marble v. Jackson, 245 Mass. 504, 139 N.E. 442... . (1923)
254 So.2d at 781 (emphasis added). Noting that either could act for both as authorized by statute, the court in Hector Supply further said, "If this is allowed by statute, then we perceive no reason why the statute cannot coalesce with the tenancy by the entirety so as to allow one spouse to draft checks in behalf of both." Id. (emphasis added). Thus, the existence of a signature card provision permitting withdrawals from a tenancy by the entireties account by either spouse is considered not inconsistent with the unities necessary for a tenancy by the entireties because one owner is deemed to be acting for both owners as a unit in making withdrawals.
This reconciliation of the above-referenced seemingly inherent conflict, or anomaly, between such a signature card provision and the ownership of an account being that of a tenancy by the entireties is even more clearly brought out in Madden. In Madden the Pennsylvania Supreme Court recognized the existence of a tenancy by the entireties in a bank account notwithstanding a provision in the account documents permitting withdrawals by either. Responding to the argument that the right of either spouse to withdraw funds from a tenancy by the entireties account would defeat the "unity of control" required for that form of ownership, the Madden court said,
Nothing in the development of tenancies by the entireties requires such a "unity of control" that one spouse may not authoritatively act for both. .. .
331 Pa. at 486, 200 A. at 629 (emphasis added). Madden went on to say,
[T]here is nothing in the law relating to entireties that would prevent the wife from giving the husband express authority to sign for her as her agent and withdraw for both of them... .

*905 Moreover, in answer to the argument that where one spouse can withdraw all the funds it should prevent a tenancy by the entireties from arising, there exist many instances at common law in which one spouse could exercise great control, short of destruction, over the res of the entireties.
331 Pa. at 486-87, 200 A. at 629-30 (emphasis added).
It is the contention ... that when the parties expressed in the agreement that "either of them" could withdraw all or any part of the fund, one of the elements essential to an estate by entirety was lacking, which ... [is described as] the unity of control, but while unity of control must exist ... [t]he fund withdrawn is still subject to the legal status of the estate, and it has stamped on it in the hands of the one who withdrew it all the elements of a trust.
331 Pa. at 488-89, 200 A. at 630 (quoting Berhalter v. Berhalter, 315 Pa. 225, 227, 173 A. 172, 173 (Pa. 1934)).
[E]ither spouse presumptively has the power to act for both, so long as the marriage subsists, in matters of entireties, without any specific authorization, provided the fruits or proceeds of such action inure to the benefit of both and the estate is not terminated. But neither may by such action destroy the true purpose of the estate by attempting to convert it or a part of it, in bad faith, into one in severalty.
331 Pa. at 489, 200 A. at 630-31.
Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn is impressed with the entirety provision that it is the property of both, and any one dealing with such specific property as severalty, knowing it belongs to both, must submit to the consequences.
Id.
Additionally showing that Simpson did not follow established law is the point that the reasoning of the Massachusetts court in Marble v. Jackson, which was rejected by the Florida Supreme Court in Hagerty, as recognized and reaffirmed in Hector Supply, 254 So.2d at 781, would support the result in Simpson (and in the trial court in the case at hand). Marble held that bank accounts, some of which were in the names of a husband or wife and others of which were in the names of husband and wife could not have been held as either tenancies by the entireties or as joint tenancies with right of survivorship because, since the funds in the accounts were withdrawable by either spouse for himself or herself, the element of unity of possession or control which is essential to those forms of ownership was absent.
This conclusion that the right of either owner to withdraw funds from a joint account held by two owners does not defeat the joint ownership nature of the account is, as Judge Cowart noted in his dissent in Wiggins, "very consistent" with this court's opinion in Drozinski. 446 So.2d at 174 n. 2. As Judge Cowart pointed out, "Drozinski held that the guardian [of one tenant of an account held as a joint tenancy with right of survivorship] did not have the right to withdraw funds not needed for the care of the ward and that the wrongful withdrawal did not destroy the incident of survivorship as to ... [the nonwithdrawing joint owner] and that ... [the nonwithdrawing joint owner], or surviving tenant, was entitled to the ownership of the withdrawn funds." Id.
Thus, Simpson, in relying upon Hector Supply in effect to disregard the tenancy by the entireties or joint tenancy with right of survivorship nature of an account and the interest of a nonwithdrawing joint owner in funds withdrawn from the account by the other joint owner, did so erroneously. In fact, in our view, for the reasons explained above, Simpson mistakenly relied upon Hector Supply for a concept directly contrary to that represented by Hector Supply.
Accordingly, the results of cases of the kind involved here may properly turn upon property concepts involving the legal incidents of the particular kind of ownership *906 interest held in an account as those concepts have long been applicable to real estate, rather than upon whether a signature card permits withdrawals by either party to the account. In Lyons the Florida Supreme Court's opinion, after referring to the incidents of ownership of real estate held as a tenancy by the entireties as precluding the termination of that kind of ownership interest by only one spouse, noted that determining whether or not joint bank account funds are so held is "more complicated"; Lyons nonetheless determined that the proper disposition of the funds in that case depended upon whether they were held in that kind of ownership interest.

(f) The Intent of the Account Creator(s) Ultimately Controls.

All of this is not at all to say that other outward manifestations from signature cards or from other evidence of intent as to the kind of ownership interest held in an account may not be relevant in a case like this. It is only to say that any such seeming manifestation from provisions in a signature card for the withdrawal of the funds by either joint owner is not relevant to determining whether the kind of ownership interest in the account which was intended was either a tenancy by the entireties or a joint tenancy with right of survivorship in order to determine, in turn, whether an ownership interest in the withdrawn funds continued in the nonwithdrawing party.[7]
In fact, such outward manifestations of other kinds may well be relevant to provide evidence of the intent of the parties as to whether an ownership interest of one joint owner continues in funds withdrawn by the other and in that regard as to the kind of ownership interest held in the account, i.e., whether the account was held as either a tenancy by the entireties, as was involved in Lyons and Lerner, or as a joint tenancy with right of survivorship, as was involved in Wiggins and apparently McGillen. In this respect some signature cards in the case at hand are alleged to identify the kinds of ownership interests in the accounts. For example, two of the cards are alleged to have stated that the accounts were held "as joint tenants with right of survivorship and not as tenants in common and not as tenants by the entirety". Such statements are of course quite relevant evidence and, in fact, in a particular case may provide the only evidence in that regard. See Winters, 91 So.2d at 652 (suggesting that signature cards should specifically state whether or not a joint account of a husband and wife is intended to be a tenancy by the entireties and saying, "[I]n the absence of language showing clearly the intent of the parties ... [as to whether they intended an estate by the entireties] it is always appropriate to investigate the facts and circumstances leading up to and surrounding the creation of the bank account in order to determine the intention of the original depositors."). Yet it should be borne in mind that in determining the kind of property interest intended to exist in a bank account "courts are controlled by the substance of the transaction rather than the name given it," 10 Am.Jur.2d Banks § 369, at 332 (1963). See also Constance, 366 So.2d at 807.
Thus, "all of the surrounding facts and circumstances," Winters, 91 So.2d at 652, may be relevant. Examples which occur to us might be other evidence as to whether there had been or were intended to be withdrawals by either or both of the joint owners and, if so, by whom and for what purpose; evidence of the ownership of the funds prior to their deposit into the account; evidence as to whether one or the other, or both, of the parties created the account and, if only one, whether it was created with the knowledge of the other; and evidence as to who retained possession of the passbook. See, for example, McGillen, 171 So.2d at 70, which refers to evidence that at the outset of the accounts the nonwithdrawing joint owner had stated his intention that the funds should belong to the withdrawing joint owner; and Winters, *907 91 So.2d at 651, which refers to evidence that the surviving joint owner had recognized that the deceased joint owner had created the accounts from his own funds and had treated the accounts as his own money.

(2) An Ownership Interest of One of Two Co-trustees in a Trust Account Alleged to Be a Totten Trust Can Be Shown to Have Continued in Account Funds Withdrawn Without That Co-trustee's Consent by the Other Co-trustee if It Was the Intent of the Creator(s) of That Account That the Trust Would Not Be Revoked by Such a Withdrawal, Notwithstanding a Signature Card Provision Authorizing Withdrawals by Either Co-trustee.

We conclude that Mrs. Medley could be shown to have had in the funds in the eight alleged Totten trust accounts ownership interests which continued after Mr. Medley's withdrawals and which became vested in the individual petitioners, to the extent the various petitioners were beneficiaries of those trusts, upon Mrs. Medley's death thereby giving them standing to sue with respect to those funds. See Smith v. Bank of Clearwater, 479 So.2d 755, 756-57 (Fla. 2d DCA 1985); In re Estate of Feldstein, 292 So.2d 404 (Fla. 3d DCA 1974) (a contingent trust beneficiary whose interest has become vested may have standing to sue the trustee for mismanagement of the trust). See also Jamlynn Investments Corp. v. San Marco Residences of Marco Condominium Ass'n, Inc., 544 So.2d 1080, 1082 (Fla. 2d DCA 1989) ("The concept of standing has been defined in a broad sense as having a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy."). That the signature card provisions authorizing such withdrawals would not have derogated from such interests has been explained in subsection (A)(1)(c) above.
Whether the individual petitioners had become holders of such vested interests appears to depend upon the evidence bearing upon several aspects: (a) the interests of Mrs. Medley as co-trustee could have continued and her ownership interests could have become vested in the individual petitioners if those trusts were not to have been revoked by Mr. Medley's withdrawals; (b) those trusts were of course not to have been so revoked if they were not revocable by only one of Mr. and Mrs. Medley (although under the definition of the term "Totten trust," see footnote 1 supra, upon such withdrawals any continuing trusts would not appear to be properly called Totten trusts); (c) those trusts were not revocable by only one of Mr. and Mrs. Medley if that was the intent of whichever, or both, of them who created the trusts. See In Matter of Estate of Art Fisher, 198 Cal. App.3d 418, 244 Cal. Rptr. 5 (Cal.Ct.App. 1988), which cites Abbale, see footnote 1 supra (rights of co-trustee of Totten trust are determined from intent of the trustee who created the trust); In re Estate of Brose, 416 Pa. 386, 395, 206 A.2d 301, 307 (1964), which cites Madden (rights of trustee of Totten trust are determined by intent of creator of trust; fact that funds in the trust came from joint funds of trustee and beneficiary is evidence of intent that trust was irrevocable by trustee alone and therefore was not truly a Totten trust). See also Silk v. Silk, 162 Misc. 773, 295 N.Y.S. 517 (N.Y. Sup. Ct. 1937) (Totten trust beneficiary has standing to sue for injury to property interest in trust funds after death of trust creator who was trustee of the trust where funds had been withdrawn during creator's life without his intent to do so or to deprive beneficiary of interest therein); 10 Am.Jur.2d Banks § 397 (1963).
On the other hand, if the evidence shows that the Totten trusts were revoked upon Mr. Medley's withdrawals, then the individual petitioners would not have had vested interests in the funds in the Totten trust accounts upon Mrs. Medley's death and would not have standing to sue in that regard. Upon such revocations the form of ownership of those funds would have reverted to that which would have existed without the trusts, apparently tenancies by the entireties. Whether then the interests of Mrs. Medley continued in those withdrawn funds would be governed by the principles discussed in subsection (A)(1) of *908 this opinion, specifically those governing ownership interests in the one joint account held as a tenancy by the entireties which was never subject to a Totten trust, and could be litigated by the party with an alleged interest therein, apparently Mrs. Medley's personal representative. In that event any rights of the individual petitioners to those funds would derive, if at all, from Mrs. Medley's estate.

(3) There Can Be a Surcharge Against a Guardian for the Guardian's Breach of Duty for Failure to Safeguard Continuing Ownership Interests of the Ward in Joint Tenancy Funds of the Types Described in Subsections (A)(1) and (2) Above.

Because, as stated in subsections (A)(1) and (2) above, we conclude from the allegations of the petition that Mrs. Medley could be shown to have had continuing ownership interests in the account funds after their withdrawals, we cannot agree with appellee's contention that appellee, as guardian of Mrs. Medley's property, cannot be shown to have breached a duty, cognizable in this surcharge proceeding, to act to safeguard her alleged interests. Such a breach appears allegedly to have occurred from appellee's failure to have prevented Mr. Medley's appropriation of the funds to his own use when he took possession of them and put them into his inter vivos trust and to have taken steps either to have retrieved such funds after they were so appropriated or at least to have avoided their ultimate distribution to his half-sister and housekeeper.
Section 744.377, Florida Statutes (1987), specifies the duties of a guardian of the property. Among them are the duties to "protect and preserve the property [of the ward]" and to "take possession of all of the ward's property." See In re Estate of Pearce, 507 So.2d 729, 731 (Fla. 4th DCA 1987); Beck v. Beck, 383 So.2d 268, 271 (Fla. 3d DCA 1980). "A guardian is chargeable in his accounts not only with all the estate of his ward, real and personal, and the proceeds thereof which actually came into his hands ... but also with money or property lost by reason of his negligence or failure of duty, or which he might have recovered and received by the exercise of reasonable diligence and ordinary prudence." 39 Am.Jur.2d Guardian and Ward § 176 (1968).
That, as argued by appellee, a number of the withdrawals are alleged to have occurred before its appointment as guardian would not necessarily appear to mean that the appellee had no such duty in that regard. It is also alleged that appellee, as Mrs. Medley's guardian, knew or should have known of those prior withdrawals and that appellee, acting as Mr. Medley's trustee, nonetheless received and then distributed the funds to Mr. Medley's half-sister and housekeeper.
We of course express no view as to whether there was actually a duty which the guardian breached under the facts.

(B) Conclusion

The Fifth District Court of Appeal has said that "[t]he law on joint bank accounts is far from uniform, and as one judge described it, `the law relating to it is in a state of morass, many of the cases which arise being treated very much on an ad hoc basis.'" Wiggins, 446 So.2d at 171, quoting Kleinburg v. Heller, 38 N.Y.2d 836, 345 N.E.2d 592, 382 N.Y.S.2d 49 (1976) (Fuchsberg, J., concurring). One might agree with that in one sense and not in another. That is, it may be concluded in the final analysis that Florida courts in these kinds of cases (not including Simpson), in deciding from the circumstances bearing upon the intent of the parties whether particular kinds of property interests existed in the accounts and on that basis whether funds withdrawn by one account owner may be traced by the other, have concomitantly, and perhaps necessarily, also decided under equitable principles involving intent of the parties who should have the funds from the accounts.
Thus, while Florida cases of this kind might appear to have been decided on a somewhat ad hoc basis, they (not including Simpson) may nonetheless be interpreted as having been decided under the consistent criterion of the intent of the party or *909 parties who created the account. See Starling, Tenancy By the Entireties in Florida, 14 U.Fla.L.Rev. 111, 118 (1961) ("[T]he cases [involving bank accounts held as tenancies by the entireties] are consistent ... [when] the ultimate question is whether ... [one] spouse shall be allowed to trace the money transferred from the account by the ... [other] spouse during his life.").
The relatively involved nature of the analysis of the law in this opinion has been to undertake to clarify the law and express what has not always been fully expressed in the cases in order to show particularly why we conclude that what was expressed, however obliquely, in one important case, Simpson, was mistaken. Yet this opinion has delved into intricacies of the law no more than we have deemed necessary to determine the sufficiency of the pleadings. A more definitive analysis of the law and its application to the facts of this case would be inappropriate at this preliminary pleadings stage.
Reversed and remanded for proceedings consistent herewith.
SCHEB, A.C.J., and DANAHY, J., concur.
NOTES
[1] In re Totten, 179 N.Y. 112, 71 N.E. 748 (1904). A Totten trust may be generally defined as a "trust created by the deposit by one person of his own money in his own name as a trustee for another ... a tentative trust revocable at will until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration... ." Black's Law Dictionary 1356 (5th ed. 1979). For discussions of Totten trusts see, e.g., Seymour v. Seymour, 85 So.2d 726 (Fla. 1956); Abbale v. Lopez, 511 So.2d 340 (Fla. 3d DCA 1987). The trusts in Abbale involved two cotrustees, as did the trusts alleged to be Totten trusts in this case.
[2] The card provided that the account, which was in the names of husband or wife, was "in payment of funds or the transaction of any other business on my or our account." The card was signed by both parties. Also, there was on the card a rubber stamp notation, "Joint owners payable to either or to survivor, subject to agreement on signature card."
[3] In this surcharge action the concern is whether appellee is sufficiently alleged to have had and breached a duty to safeguard interests of Mrs. Medley in funds withdrawn by, and in the possession or under the direction of, Mr. Medley. Therefore, we need not and do not address the status of interests of one joint account owner in funds withdrawn by the other owner after the other owner's further disposition of the funds to a third party.
[4] That opinion meant that the withdrawal was wrongful as between parties to the account (i.e., that a withdrawal of more than a party's moiety is wrongful) and recognized, as we will further explain below, that a withdrawal pursuant to signature card authorization is not wrongful as between the withdrawer and the financial institution. 446 So.2d at 174 n. 1.
[5] That implicit recognition appears reinforced by the lack of disagreement in the Wiggins dissent with the statement in the Wiggins majority opinion that the New York courts, which would find a continued joint tenancy under the Wiggins circumstances (the result endorsed by the Wiggins dissent), would hold that such a withdrawal of only a moiety would have so terminated the joint tenancy. 446 So.2d at 171. See also 48A C.J.S. Joint Tenancy § 20 (1981).
[6] While Lyons and Winters indicate that funds withdrawn by one spouse from a joint account held in the names of husband and wife may be traced by the nonwithdrawing spouse if the form of ownership of the account is a tenancy by the entireties, for the foregoing reasons we do not conclude that those cases were intended to exclude such tracing of funds withdrawn from an account held as a joint tenancy with right of survivorship. See Wiggins; McGillen.
[7] It may well be that in particular cases such a signature card provision would happen to be consistent with the intent found to control the ownership of funds withdrawn from a joint account. See, e.g., McGillen.